CASE 111—PETITION EQUITY—JUNE 16.

# Geo. T. Stagg Company, &c., v. E. H. Taylor, Jr., & Sons.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. TRADE-MARK.—Where a corporation, doing business under the corporate name of E. H. Taylor, Jr., Co., operated two distilleries, known as the "O. F. C." and "Carlisle" distilleries, and upon the product of the former distillery a brand was used consisting of the letters and words "O. F. C., Hand-made Sour Mash Whisky, E. H. Taylor, Jr., Distiller," and upon the product of the latter a brand consisting of the words "Carlisle Standard Sour Mash Whisky, E. H. Taylor, Jr., Co., Distiller," the essential feature of the trade-mark in the one case was the letters "O. F. C.," and in the other the word "Carlisle," as the words "Hand-made" and "Standard Sour Mash Whisky" were not intended as a part of the trade-mark, even if they could have been so used, and for the name of the distiller in the brand there was to be substituted, as we must suppose, the name of the person of whom it could be truthfully said he was the distiller. And the subsequent use as an adjunct to these brands of the *fac simile* of the signature of E. H. Taylor, Jr., sometimes with and sometimes without the addition of the word "company," can not be regarded as making that signature a part of the trade-mark, E. H. Taylor, Jr., receiving no compensa-

tion therefor; and upon the withdrawal of E H. Taylor, Jr., from the corporation, the corporation had no right to use his autograph signature or to advertise him as the distiller of whisky thereafter manufactured, there being no sale by Taylor to the company of the right to use his signature, and it being doubtful whether such a use could have been made of this autograph if it had been in express terms transferred, such a use of another's autograph being a fraud upon the public.

2. SAME.—The statement in the registration of a trade-mark that certain words of the brand may be omitted shows that they are not regarded as a part of the trade-mark.

3. SAME—RIGHT TO ACCOUNT OF PROFITS.—While the defendants were properly enjoined from using the name of Taylor as a part of their trade-mark and from advertising their whiskies as "Taylor" or "Old Taylor," the plaintiffs are not entitled to an account of profits, as the defendants acted under color at least of title and conveyance from Taylor and without any fraudulent intent, the use of the name of E. H. Taylor, Jr., and his autograph being in the nature of a license or permit, which has not been abused or extended unreasonably.

4. PURCHASE BY ONE STOCKHOLDER OF ALL THE STOCK OF A CORPORATION.—The withdrawal of E. H. Taylor, Jr., from the E. H. Taylor, Jr., Company, and the purchase of all the stock of that corporation by a single stockholder, suspended the existence of the corporation so far as the public was concerned, and therefore E. H. Taylor, Jr., did not violate any of the legal rights of the sole stockholder of that corporation, who continued to operate the "O. F. C." and "Carlisle" distilleries, by assuming in connection with his sons in the operation of another distillery the partnership name of E. H. Taylor, Jr., & Sons, although similar in appearance to the corporate name of "E. H. Taylor, Jr., Co."

5. FINAL ORDER.—An order of reference to a commissioner, with directions to take an account of profits, was merely interlocutory.

HUMPHREY & DAVIE FOR APPELLANTS.

1. E. H. Taylor, Jr., having, for valuable consideration, united in forming a corporation to exist for twenty-five years, under the corporate name of "The E. H. Taylor, Jr., Company," thereby debarred himself from using his own name, during the existence of the corporation, in such a form as to confuse the trade of the corporation. (Haydon Co. v. Haydon, 9 Am. Rep., 324 (37 Conn., 238); Frazier v. Frazier Co., 2 Am. St. Rep., 73 (121 Ill., 147); Russia Cement Co. v. LePage, 9 Am. St. Rep., 685 (147 Mass., 206); Symonds v. Jones, 17 Am. St. Rep. 485 (82 Maine, 302.)

2. The contracts, acts and conduct of Taylor were such as to vest in the E H. Taylor, Jr., Co., while making the same goods at the same distillery, the exclusive right to use the name of "Old Taylor" and

Geo. T. Stagg Co., &c., v. E. H. Taylor, Jr., & Sons.

"Taylor" on said whisky, and to debar Taylor from using any similar name or brands. (Brown Co. v. Meyer, 139 U. S., 540; Kidd v. Johnson, 100 U. S., 666; Dant v. Head, 90 Ky., 255; Mattingly v. Stone, 12 Ky. Law Rep., 76; Hoxie v. Chaney, 58 Am. Rep., 149; Dixon Crucible Co. v. Guggenheim, 2 Brewster (Pa.) 321; Cox's Am. Trade-mark Cases, 559; Sebastian on Trade-marks; Gillis v. Hall, Cox's Am. Trade-mark Cases, 598; Solis Cigar Co. v. Pose, 26 Pac. Rep., 558; Pepper v. Labrot, 8 Ky. Law Rep., 141.)

3. The script signature of " E. H. Taylor, Jr., Co." in the handwriting of Taylor was adopted by the company, with his consent, as its trademark signature. It thus became a lawful trade-mark of the company; and Taylor could not afterward infringe it by adopting a similar script trade-mark for his firm. (Compere v. Bajou, 2 Brewster (Pa.), 321; Cox's Am. Trade-mark Cases, 568; Browne on Trademarks, sec. 209; Jennings v. Johnson, 37 Fed. Rep., 364; Browne on Trade-marks, secs. 130, 207.)

4. The fact that the E. H. Taylor, Jr., Co. transferred the distillery and trade-marks to the Geo. T. Stagg Co. for a year or two, and then received them back by a re-transfer, did not, in any manner, forfeit the right to those brands, or abandon them to the use of Taylor or the public. (Glen v. Hall, 61 New York, 234; Christy v. Murphy, 12 How. Pr. R., 77; Julien v. Hoosier Co., 78 Ind., 413; Blakeman's Case, 13 Blatchford, 400; Mattingly v. Stone, 12 Ky. Law Rep., 76.)

5. Taylor's conduct in using these names, brands and the script signature was not only a wrong to the E. H. Taylor, Jr., Co., but was also a wrong to each owner of the whisky made by that company and bearing those brands, and Stagg, as the owner of a large amount of the whisky made by the company while Taylor was with it, has the right to enjoin Taylor from diminishing its value by using its brands on other whisky. (High on Injunctions, 3d ed., sec. 1102; Walton v. Crowley, 3 Blatchford, 440; Browne on Trade-marks, sec. 63.)

6. There should be no allowance of damages, nor an account of profits, in this case; first, because, even if Stagg had no right to the profits, they would belong to the E. H. Taylor, Jr., Company, and not to E. H. Taylor; secondly, because the brands were used under contracts and deeds and assignments from Taylor himself, and without any fraudulent intent, under the bona fide belief that the company had the right to continue their use; thirdly, because, while Taylor began his new firm of E. H. Taylor, Jr., & Sons, in 1887, he acquiesced in the right of the company to use the brands for a year or two after that, without complaint; fourthly, it is not shown that Taylor's firm could have made or sold this " O. F. C." and " Carlisle" whisky, which the company made, and on which he now claims the profits; and, fifthly, the delay, acquiescence and consent of Taylor, from 1879 to October, 1889, before suing, will prevent a court of equity from giving dam-

ages or profits. (MacLean v. Fleming, 96 U. S., 257; Harrison v. Taylor, Cox's Am. Trade-mark Cases, 675 (11 Jurist, U. S., 408); Beard v. Turner, Cox's Am. Trade-mark Cases, 717; Estcourt v. Estcourt, L. R., 10 Chy. App., 280; Sawyer v. Kellogg, 9 Fed. Rep., 602.)

D. W. LINDSEY AND JOHN W. RODMAN, ON SAME SIDE.

1. The corporation "E. H. Taylor, Jr., Co.," did not cease to exist when Stagg became the sole owner of the stock. (Gen. Stats., chap. 56., secs. 8, 12; Morawetz on Private Corporations, secs. 633, 634, 635, 636, 637; Russell v. McLellan, 14 Pick., 69; Newton Mfg. Co. v. White, 42 Ga., 148.)

2. Whether there has been a forfeiture of the charter or an extinction of the company, can only be determined by a direct proceeding for that purpose, and not collaterally. (2 Kent, 312; Bank of Gallipolis v. Trimble, &c., 6 B. M., 601; Gen. Stats., chap. 56, secs. 17 and 18.)

3. A trade-mark defined (Shaver v. Shaver, 37 Am. Rep., 194; Metcalfe v. Brand, 86 Ky., 331; 12 Am. St. Rep., 730, note citing Schneider v. Williams, 44 N. J. Eq., 391; Browne on Trade-marks, sec. 52.)

4. If the other parts of the brand are to be eliminated so must the letters "O. F. C.," for the authorities are that "Old Fashioned Copper" or "Old Fire Copper," or letters standing for the same, can not of themselves constitute a legal trade-mark—that such letters as a symbol can only constitute a trade-mark when coupled with the name of the manufacturer. (Fulton v. Sellers, Cox's Manual Trade-mark Cases, 279.)

5. The words "E. H. Taylor, Jr., Distiller" were never used upon any whisky other than such as was manufactured at the O. F. C. distillery when Taylor was connected with the E. H. Taylor, Jr., Co., and the right to use it upon such whisky can not be successfully questioned. (Mattingly v. Stone, 12 Ky. Law Rep., 75; 41 Fed Rep., 214; 24 Barb., 163.)

6. The script signature, "*E. H. Taylor, Jr., Co.*," became a trade-mark. (McAndrews v. Bassett, 4 DeGex. 380; Leather Co. v. Leather Co., 4 DeGex, 142; 12 Am. Stat. Rep., 730, note; Browne on Trade-marks, sec. 52.)

　　Having the lawful right to this corporate name the company could use it for any legitimate purpose, and is entitled to protection in its use. (Holmes, Booth & Haydon v. The Holmes, Booth & Atwood Co., 9 Am. Rep., 324; Newby v. Oregon Cen. Ry. Co., 1 Deady, 609.)

7. One parts with the right to use his own name as a trade-mark, or name, when having permitted it to be used as part of a trade name or mark of a partnership of which he was a member, the partnership sell their business and the right to use the trade-marks belonging to or used by

Geo. T. Stagg Co., &c., v. E. H. Taylor, Jr., & Sons.

the partnership. (Miller v. Cummins, MS. Op., June 19, 1884; Burry v. Bedford, 10 Jurist, new series, 503; Hoxie v. Chaney, 58 Am. Rep., 148; Russia Cement Co. v. La Page, 9 Am. St. Rep., 685.)

8. As Taylor sold to Stagg and the "E. H. Taylor, Jr., Co." for a valuable consideration all interests whatsoever he had in and to the effects and business of the company, he made a fair sale of the good will, which includes the firm or corporation name. (Benninger v. Clark, 10 Abb. Pr. U. S., 264; Menendez v. Holt, 128 U. S., 522; Meny v. Hoopes, &c., 111 N. Y., 415; Kinney Tobacco v. Maller, 53 Hun, 340; Banks v. Gibson, 34 Beav., 566.)

9. When a trade-mark is affixed to articles manufactured at a particular establishment, and acquires a special reputation in connection with the place of manufacture, and that establishment is transferred, either by contract or operation of law, to others, the right to the use of the trade-mark may be lawfully transferred with it. Its subsequent use by the person to whom the establishment is transferred is considered as only indicating that the goods to which it is affixed are manufactured at the same place and are of the same character as those to which the mark was attached by its original designer. (Kidd v. Johnson, 100 U. S., 617; Burton v. Stratton, 12 Fed. Rep., 696; Pepper v. Labrot, 8 Fed. Rep., 29; Skinner v. Oates, 10 Mo. App., 45; Hoxie v. Chaney, 58 Am. Rep., 149; Dant v. Head, 12 Ky. Law Rep., 154; Mattingly v. Stone, 12 Ky. Law Rep., 73; Compere v. Bajou, Upton on Trade-marks, p. 83; Burry v. Bedford, 4 DeGex, 351; Cummins v. Miller, MS. Op., June 19, 1884; Hazzard v. Caswell, 45 Am. Rep., 198; Fulton v. Sellers, Cox's Trade-mark Cases, 279; Brown Chemical Co. v. Meyer & Co., Op. U. S. Sup. Ct., delivered April 6, 1891; Jennings v. Johnson, 37 Fed. Rep., 364.)

10. To entitle the plaintiffs to relief they must show that they come into court with clean hands. (Parlett v. Guggenheimer, 1 Am. St. Rep., 416; 12 Am. St. Rep., 780, note; McAndrews v. Bassett, 4 DeGex, 380; Metcalfe v. Brand, 86 Ky., 331.)

11. Upon the counterclaim of appellants the court below erred in not restraining appellees from the use of their infringing brand. (Lemoin v. Blanton, 2 E. D. Smith, 343; Mattingly v. Stone, 12 Ky. Law Rep., 75; Leather Cloth Co. v. Leather Cloth Co., 4 DeGex, 138; Browne on Trade-marks, sec. 63.)

GEO. C. DRANE FOR APPELLEES.

1. The use of the name and autograph of E. H. Taylor, Jr., by the E. H. Taylor, Jr., Co., in and upon brands, signs, etc., and in advertisements, whilst he was a member of or connected with said company, was intended to signify, and was understood by the public to signify, that the whiskies made at their distilleries and sold and offered for sale by

Geo. T. Stagg Co., &c., v. E. H. Taylor, Jr., & Sons.

said company were manufactured under his especial supervision, and possessed a quality and merit which his well-known skill and integrity had given to them.

2. The right to so use his name and autograph was never, at any time, transferred, surrendered or relinquished by Taylor to Stagg or the E. H. Taylor, Jr., Co.; but was so used by said company whilst Taylor was connected with or interested in its business, by his permission and without consideration therefor.

3. The permission to use Taylor's name and autograph, having been gratuitous, was a mere license, revocable at Taylor's will and pleasure. (Browne on Trade-marks, 364, 528; 4 Lawson's Rights and Remedies, sec. 1648; 2 Parsons on Contracts, marg'l page 257, c. c., note t; Kidd v. Johnson, 100 U. S., 617; McCardell v. Peck, 28 How. Pr., 120.)

4. The right to so use Taylor's name and autograph could not continue or exist in E. H. Taylor, Jr., Co., after he had parted with or ceased to hold his interest in the business in connection with which it had been theretofore used. He could not transfer, nor could the company acquire, the right to use Taylor's name or autograph, in any way, to represent that the whisky made at their distilleries, at a time when he was not connected with nor interested in their business, was manufactured by Taylor or under his especial supervision. (Browne on Trade-marks, secs. 57, 437; 2 Parsons on Contracts, 7th ed., marg'l page 257; Skinner v. Oakes, 10 Mo. App., 215; Oakes v. Tonsmierre, 4 Wood (U. S.), 555; Symonds v. Jones, notes to, 17 Am. St. Rep., 485; Hall v. Barrons, 10 Jur. (N. S.), 55; Burry v. Bedford, 9 Jur. (N. S.), 956; Mattingly v. Stone, 12 Ky. Law Rep., 76.)

5. Transferee can not sell his goods as made by transferrer. (Browne on Trade-marks, 490, 672, note 4; Partridge v. Menck, How. App., 559; Sherwood v. Andrews, 5 Am. Law Reg. (N. S.), 588; Medicine Co. v. Wood, 108 U. S., 218; Compere v. Bajou, Browne on Trade-marks, secs. 209, 210, 211; Symonds v. Jones, 17 Am. St. Rep., 485.)

6. A corporation organized under chapter 56, General Statutes, ceases to exist when the stock is owned by one person. (Gen. Stats., chap. 56, secs. 1, 17, 18; 3 Bland Ch. (Md.), 442.)

7. A corporation may be dissolved de facto before its legal right to exist has expired and before it is dissolved de jure (4 Am. & Eng. Enc. of Law, note 3, p. 294; 2 Morawetz on Corporations, 2 ed., 962; 66 Am. Dec., 490; 72 Am. Dec., 685.)

WM. LINDSAY ON SAME SIDE.

1. If a trade-mark indicates that the article upon which it is used was manufactured by or under the personal supervision of one whose name appears on such trade-mark, but who has, in fact, parted with his interest in the business and the trade-mark, this misrepresentation must be counteracted by some statement accompanying or made part

of the trade-mark, and showing that it is being used by the successor in business of the originator of the trade-mark whose name appears as part thereof. (Browne on Trade-marks, sec. 208; Symonds v. Jones, 82 Me., 302; Manhattan Med. Co. v. Wood, 108 U. S., 218; note to Symonds v. Jones, 17 Am. St. Rep., 496.)

2. All the way down from Taylor to the E. H. Taylor, Jr., Co., the essential feature of the trade-mark was the symbol " O. F. C.," and none of the other words were regarded as parts of that trade-mark. (L. H. Harris Drug Co. v. Stuckey, 46 Fed. Rep., 624.)

3. The order of reference was merely interlocutory. (Adkisson v. Dent, 88 Ky., 628.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In January, 1887, the appellees, E. H., J. S. & Kenner Taylor, formed a partnership under the name of E. H. Taylor, Jr., & Sons, and began the manufacture of whisky at what had theretofore been known as the " J. S. Taylor Distillery," in Woodford County, Ky. They at once changed the name of their distillery to the " Old Taylor" distillery, and before the end of the year had discontinued the use of the name, " J. S. Taylor," in connection with the distillery or the whisky manufactured there, branding, advertising and selling their product as " Old Taylor" whisky. They devised a brand which was put on barrels, bottles and other packages and used in their advertisements, circulars, letter-heads, etc., consisting of the words " Old Taylor Hand-made Sour Mash Whisky, E. H. Taylor, Jr., Distiller, Frankfort, Ky," arranged in a circle; and underneath this appeared the inscription, " E. H. Taylor, Jr., & Sons," in *fac simile* of the handwriting of E. H. Taylor, Jr. They branded other of their whiskies, later on, " Old Taylor," and underneath these words placed the inscription, " E. H. Taylor, Jr., & Sons," in the autograph of E. H. Taylor, Jr. They continued without interference to operate the distillery and transact business as whisky merchants, with office

and headquarters at Frankfort, some seven or eight miles
distant from their distillery, until the early part of 1889,
when, as we learn from their petition, the appellants be-
gan to manufacture whisky at their distilleries, known as
the "O. F. C." and "Carlisle" distilleries, near Frank-
fort, and to imitate the brands of the appellees, use the
autograph signature of E. H. Taylor, Jr., and otherwise
interrupt and injure their business. On the 16th of
October, 1889, they brought this action to prevent the
appellants from further using the brands and script in
question and for damages.

The appellants asserted the right to use the disputed
brands, including Taylor's autograph, and set up by way
of counterclaim that the appellees had themselves wrong-
fully appropriated the brands, trade-marks, labels, etc.,
of the appellants, for which they asked damages.
They based their claims upon a state of case grow-
ing out of E. H. Taylor's connection with them-
selves in operating the "O. F. C." and "Carlisle"
distilleries prior to the formation of the partnership of
E. H. Taylor, Jr., & Sons in January, 1887.

Upon hearing, after an elaborate preparation of the
case, the chancellor determined the issues of fact and of
law adversely to the appellants, and enjoined them from
using the words "E. H. Taylor, Jr., Distiller," and the
autograph signature of E. H. Taylor, Jr., upon any
whiskies produced at their "O. F. C." and "Carlisle"
distilleries since January 1, 1887; ordered an account
taken of profits on the whiskies manufactured by the
appellant since January, 1887, on which the script auto-
graph had been used, and dismissed their counterclaim.

The controlling questions are, has E. H. Taylor, Jr., so.

complicated himself with the business of the appellants during the years prior to January, 1887, as to deprive himself and his associates of the use of the firm name, E. H. Taylor, Jr., & Sons, and as to confer on the appellants the right to use against his will the autograph signature of E. H. Taylor, Jr. And have the appellants in connection with E. H. Taylor, Jr., or otherwise, so appropriated the name, "Old Taylor," for the whiskies theretofore made at the " O. F. C." and " Carlisle" distilleries as to preclude the appellees, E. H. Taylor, Jr., & Sons, from such use as a trade-mark or brand?

In 1868, or 1869, E. H. Taylor, Jr., became the owner of and began to operate a distillery in Franklin County, near Frankfort, to which he gave the name of "O. F. C." Distillery, and to the product of which he gave the name of "O. F. C. Whisky." He put upon his packages of whisky, and used upon labels and in advertisements, a brand, in circular form, consisting of the words " O. F. C. Hand-made Sour Mash Whisky, E. H. Taylor, Jr., Distiller, Frankfort, Ky."

Taylor continued to operate the distillery in this way until about May, 1877, when he failed, and was forced by his creditors into bankruptcy. In December, 1877, a composition was effected with his creditors at twenty cents on the dollar, and Gregory, Stagg & Co., St. Louis whisky merchants, and large creditors of Taylor, agreed to furnish the funds necessary to effectuate the composition—an arrangement being made alike profitable to both parties. In pursuance of this arrangement, the O. F. C. distillery property was, by order of the United States District Court, reconveyed to Taylor, who, with his wife, conveyed the property to Geo. T. Stagg. Taylor then

assigned to Stagg the O. F. C. trade-mark, and Stagg, Gregory, Stagg & Co. uniting with him, leased to Taylor the O. F. C. distillery property with the right to use the O. F. C. trade-mark. Taylor continued the business in his own name, the " O. F. C." whisky, in the meantime, attaining a phenomenal reputation, until the fall of 1879, when, for reasons not disclosed in the record, a corporation was organized and created of the style of " The E. H. Taylor, Jr., Company." To that corporation Stagg, in October, 1879, conveyed the distillery property and also assigned the trade-mark. As this trade-mark or brand is, to an important extent, the subject-matter of this litigation, we turn to the registration made of it by Taylor in the patent office in 1872, and to its reregistration in the same office by Geo. T. Stagg as assignee of Taylor, made shortly before its assignment to the E. H. Taylor, Jr., Co. The specification filed by Taylor is as follows: " The whisky made by me is hand-made sour mash whisky, and as such is known in the market. The trade-mark consists of the letters ' O. F. C.' and is used with or without the words ' Hand-made Sour Mash Whisky, E. H. Taylor, Jr., Distiller, Frankfort, Ky.,' or words to like effect. It is branded on the heads of the barrels or packages containing said whisky, and, therefore, mostly used in black color, though it may also, in suitable tint, be printed on labels that apply to bottles, and on show-cards, or notices that advertise the same to the public." Stagg, in 1878, thus described it :

" My trade-mark consists of the letters ' O. F. C.,' the same being an arbitrary symbol. This trade-mark has generally been arranged as shown in the accompanying *fac simile*, to-wit, in connection with the words ' Hand-

made Sour Mash Whisky, E. H. Taylor, Jr., Distiller, Frankfort, Kentucky;' but the said words may be transposed, some of them omitted, or other words substituted, as may be found most convenient for the purpose intended, without materially changing the character of my trademark, the essential feature of which is the symbol consisting of the letters ' O. F. C.' " Again, in October, 1881, the E. H. Taylor, Jr., Co. registered this trade-mark in the patent office in substantially the language employed by Stagg some three years before.

At this point in the history of the case we may state our conclusion to be, that the trade-mark thus coming to the ownership of the corporation, E. H. Taylor, Jr., Co., consisted, so far as it was exclusively distinctive in its character, only of the letters " O. F. C." The other words were appropriately grouped about these letters to indicate the general character of the whisky and that E. H. Taylor, Jr., was the distiller. We do not suppose these words, " hand-made " and "sour mash," are such as can properly be claimed and used exclusively as a trademark, and we suppose the name " E. H. Taylor, Jr.," was one for which another name was to be " substituted," as " Distiller," when occasion demanded it, which would be when Taylor ceased to be the distiller of the " O. F. C." whisky. But be this at it may, the intention of the parties adopting this trade-mark, as expressed in its repeated registration, is to the effect that the symbolic letters, " O. F. C.," alone constituted the trade-mark.

Upon the organization of this corporation Stagg became its president and E. H. Taylor, Jr., its vice-president, the stock being owned and controlled by them, with all distilling operations under Taylor's management. It

erected at once another distillery adjacent to the " O. F.
C.," and to it gave the name of the " Carlisle Distillery,"
and upon all packages of whisky manufactured at this
distillery the company placed a brand consisting of the
words, " Carlisle Standard Sour Mash Whisky, E. H.
Taylor, Jr., Co., Distiller, Frankfort, Ky." There was
no registration of this brand as a trade-mark, but the fair
inference is that its "essential feature" was intended by
the parties to be the word " Carlisle." The words
" Standard Sour Mash Whisky " were not so intended,
even if they could have been so used, and for the name
of the distiller in the brand there was to be substituted,
as we must suppose, the name of the person of whom it
could be truthfully said, he was the " distiller."

In the operation of these distilleries—the " O. F. C."
and the " Carlisle"—the distiller was E. H. Taylor, Jr.
That it was deemed important to indicate to the trade
that he was the distiller is shown by the conduct of all
the interested parties. He had been engaged in distill-
ing for more than twenty years, and had given the " O.
F. C." whisky a reputation equal to any made in Ken-
tucky. Its superior quality was attributed largely to his
skill as a distiller, and the intelligent and careful superin-
tendency he gave to the methods of distillation. In one
of the E. H. Taylor Co.'s circulars (and we use it as a
sample of many others of the same import), it is said :
" Mr. Taylor's long experience in distilling and his in-
telligent acquaintance, theoretically and practically, with
the arcana of fermentation and distillation, together with
his known pride in excelling in the quality of product,
are guaranty of that quality."

In 1880, or 1881, to still further impress on the public

and the trade the personal connection of E. H. Taylor, Jr., with the manufacture of its whiskies, for the somewhat impersonal designation " E. H. Taylor, Jr., Co., Distillers," was substituted the words " E. H. Taylor, Jr., Co., Distillers," in the well-known and striking autograph signature of E. H. Taylor, Jr., with a " caution" to the trade that such script was the test of the genuineness of " O. F. C." and " Carlisle" whiskies in the market. Was this autograph of E. H. Taylor, Jr., whether in the form of the individual name of " E. H. Taylor, Jr., Distiller," or of the corporate name of " E. H. Taylor, Jr., Co." a part of the trade-mark of the " O. F. C." and " Carlisle" whiskies? In this connection it is interesting to notice the origin of the adoption of this script as shown by the testimony. Stagg says that on an occasion when Taylor was in St. Louis, the latter noticed a striking script signature on packages of imported brandy and was impressed with the idea that the signature of the company, as written by him, would be appropriate and look well on a barrel. Taylor suggested it, Stagg agreed with him, and it was done.

It is not pretended that the corporation purchased from Taylor the right thus to appropriate his personal signature, or that he was compensated therefor by any one in any way, or to any extent. Taylor contends that it was a mere fancy with him, and was intended to show his personal identification with the distillery operations of the company.

That such was the intention seems clear enough, and such was doubtless the effect of the use of the script. The combination of Taylor's name and the *fac simile* of his striking signature would easily and necessarily raise

the inference that he was not only personally connected with the company, but was in fact its "distiller." It seems doubtful that such use could have been made of this autograph after Taylor withdrew from the concern and ceased to be its distiller, even if in express terms he had attempted to sell it to the corporation or to Stagg. As aptly said by counsel, "public policy and common honesty would forbid any such transaction." Be that as it may, there has been no such transfer or attempted sale. The claim of appellants, through the E. H. Taylor, Jr., Co., to the continued use of this autograph is based on an inference merely, arising out of Taylor's consent to its use while he was identified with the business. It was not a part of the original trade-mark, but is claimed as a sort of adjunct thereto. Considering the circumstances of its adoption, that it was inspired by the mere fancy of Taylor, that there was no consideration for its use, that there was no agreement or contract connected with its use, and not overlooking the fact that its use pointed out Taylor as the distiller of the concern for the time being and identified him therewith as much so as his physical features would have done, and that a continuance of this misleading feature would be an imposition on the public, we are convinced that even after the adoption of this script, the trade-marks of the company, and those claiming thereunder, consisted of the symbol "O. F. C" and the name "Carlisle." These were the "essential features," and the fact that the other words might be "omitted" as shown by the specification of the O. F. C. trade-mark in the patent office, shows that these other words were not regarded as a part of the trade-mark. (See similar registration in Harris Drug Co. v. Stucky,

46 Federal Reporter, 624.) In 1882, the E. H. Taylor, Jr., Co. purchased a third distillery, situated about six miles from Frankfort, in Woodford County, which had theretofore been owned and operated by J. S. Taylor. They operated this distillery in the name of J. S. Taylor, using the brand he had theretofore used, viz.: "J. S. Taylor's Hand-made Sour Mash Whisky, Woodford Co., Ky.," and in addition thereto used the name, "J. Swigert Taylor" in *fac simile* of his handwriting.

The company continued to operate these three distilleries, and to do so successfully, until in December, 1886, when, in pursuance of a written contract to that effect, Stagg and the E. H. Taylor, Jr., Co. conveyed to E. H. Taylor, Jr., the J. S. Taylor distillery in Woodford County, in consideration of which Taylor relinquished all interest in and to the effects and business of the company and retired therefrom. Upon obtaining the J. S. Taylor distillery, Taylor at once associated his sons with himself in business as E. H. Taylor, Jr., & Sons, and, as we have seen, began the manufacture of whisky at the J. S. Taylor distillery. The withdrawal of E. H. Taylor, Jr., from the company left Geo. T. Stagg the sole owner of the stock of the company, and the "O. F. C." distillery was run by him in the name of the company until July, 1887. From that date until January, 1889, both the Carlisle and the O. F. C. distilleries remained idle, as the Carlisle distillery had remained from the beginning of the year 1887. The "Geo. T. Stagg Co." was organized in November, 1887, and thereupon the E. H. Taylor, Jr., Co. surrendered its distilleries, warehouses, dwelling-houses, grain elevators, cattle-pens, and other properties and its goodwill, trade-marks, brands, etc., to the Geo. T. Stagg Co.,

and that company leased these properties to the appellant, Stagg. Upon the organization of the Geo. T. Stagg Co., the purpose of which organization was to operate distilleries, manufacture, purchase and sell whiskies, buy, feed and sell cattle, etc., the trade and public were notified by circulars. The apparently defunct E. H. Taylor, Jr., Co., notifying the " trade " that it had transferred to " the Geo. T. Stagg Company, of Louisville, Ky., the O. F. C. and Carlisle distilleries, situated near Frankfort, together with the brands, trade marks, good-will, etc., of the business," and directing " holders of warehouse receipts for O. F. C. and Carlisle whiskies, stored in bonded or free warehouses," to hand in their receipts to that company when wishing to withdraw their goods.

The Geo. T. Stagg Co., in the same circular, stated to the public, among other things, " that in methods of manufacture and character of materials used," they would omit nothing to sustain the reputation of the products of the celebrated O. F. C. and Carlisle whiskies. The company also placed in large letters on its office doors in Louisville, the words " The Geo. T. Stagg Company, Distillers of O. F. C. and Carlisle Whiskies."

These circumstances, and others we need not stop to discuss, induce us to believe that it was the intention of all the parties, at the time of the withdrawal of Taylor from his business association with Stagg, that the corporation, E. H. Taylor, Jr., Co., was to cease all active business operations. It deliberately advertised itself as going out of business and as having turned over its possessions, good-will, etc., to another. The Geo. T. Stagg Co. stepped into its place, and so notified the public. It may be true that Stagg, who owned all its stock, found it

convenient to retain the name merely for purposes connected with certain governmental regulations. As a matter of law it stood suspended so far as the public was concerned. (Louisville Banking Company v. Eisenman, &c., 94 Ky., 83.) We do not believe, and this is the point in considering the facts just enumerated, that it was incompatible with business integrity on the part of Taylor, or violative of any of the legal rights of Stagg or the Geo. T. Stagg Company, that Taylor should, in connection with his sons, assume the partnership name of E. H. Taylor & Sons, though similar in appearance to the corporate name "E. H. Taylor, Jr., Co." We think rather that it was the expectation of all the parties concerned that the name of E. H. Taylor, Jr., as a part of the corporate name of a defunct corporation should, within a reasonable time, entirely disappear. That it was the ambitious purpose of Geo. T. Stagg to substitute his own name, or that of the corporation bearing his name, as the distiller and proprietor of the famous O. F. C. and Carlisle distilleries and their accompanying brands of whisky, we do not doubt. He made no complaint of the use of that firm name by the Taylors when they assumed it, but, on the contrary, sold them, as such firm, some twenty-odd thousand dollars worth of J. S. Taylor whisky in the spring of 1887.

It follows, from what we have said, that upon their resumption of business in 1889, the Geo. T. Stagg Co. and Stagg could not lawfully use the autograph signature of E. H. Taylor, Jr., as it might appear in the corporate name E. H. Taylor, Jr., Co., or otherwise, or advertise him as the distiller of their O. F. C. or Carlisle whiskies,

as they claimed they had the right to do, and, in some instances, did.

Nor do we think the appellants can justly complain of the use by the appellees of the trade-mark, "Old Taylor" whisky. While there is abundant proof that the O. F. C. and Carlisle whiskies were frequently called by dealers O. F. C. (Taylor) or Taylor's O. F. C., Taylor Carlisle or Carlisle (Taylor), etc., yet the parties interested and who alone had the right to name their whisky and adopt its trade-mark as a distinguishing feature, did not so call it or brand it "Taylor" or "Old Taylor" whisky, or in anywise associate the name Taylor with it, save in the use of the signatures heretofore discussed; though at the time the suit was instituted the proof conduces to show that the appellants began to apply to the O. F. C. whisky the name of Taylor whisky. We conclude, therefore, that the chancellor properly enjoined the appellants from advertising E. H. Taylor, Jr., as the "Distiller" of their "O. F. C." or "Carlisle" whiskies, save when such statements were in fact true. The words E. H. Taylor, Jr., constituted no part of their trade-mark and their use was an imposition on the public, save when they could be truthfully used. (Mattingly v. Stone, 12 Ky. Law Rep., 76; Browne on Trade-Marks, secs. 57 and 437.)

That the appellants were also properly enjoined from the use of the *fac simile* of the autograph signature of E. H. Taylor, Jr., save as to goods made before January, 1887; and this is true, whether used with or without the additional word "Company." The effect is the same and was intended to indicate the continued personal connection of Taylor with the O. F. C. and Carlisle whiskies. The autograph can not be used to effectuate such an intention,

and such was the manifest design and would be the nec-
essary result of such use by the appellants. (Symonds v.
Jones, notes to, 17 Am. St. Rep., 485; Browne, Trade-
Marks, sec. 208.)

The judgment is also to be approved in denying to the
appellant the use of the words " Taylor " or " Old Taylor "
as brands for their whiskies, and in confirming such use
to the appellees, and in dismissing the counterclaim of
the appellants.

But the decree directs an accounting of profits, and
that, too, from January 1, 1887, when there was no com-
plaint until in 1889. It can hardly be claimed that this
is proper even if damages are recoverable at all in this
case. There has been no judgment or final order on this
branch of the case, but the order of reference to the
master indicates the basis for a further judgment. It
does not seem to us that the appellees are entitled to an
account of profits. The proof does not show any fraud-
ulent intent on the part of the appellants, or those under
whom they claim. It is shown that they used no other
brands, labels, advertisements, etc., than they had always
used or supposed themselves entitled to use, and this they
did under color at least of title and conveyance from Tay-
lor. During the whole of the years 1887 and 1888, for a
portion of which time at least the appellants manufactured
whisky, there was no complaint. In the conclusions
reached we have adopted the theory of the appellees, that
the use of the name of E. H. Taylor, Jr., and his auto-
graph by the appellants was in the nature of a license or
permit, and we do not see that this has been abused or ex-
tended unreasonably. Relief in the way of damages is
frequently refused by courts of equity, even when the

Geo. T. Stagg Co., &c., v. R. H. Taylor, Jr., & Sons.

right of the party to an injunction is acknowledged.
(McLean v. Fleming, 96 U. S., 245; Cox's Am. Trade-
mark Cases, 675-717.)    This order of reference, however,
is merely interlocutory, and the future conduct of the
case in this behalf will, doubtless, be based on correct legal
principles.

Perceiving no error in the judgment, it is *affirmed.*