CASE 86—ACTION BY E. H. TAYLOR, JR. & SONS AGAINST GEORGE T. STAGG, &C., FOR DAMAGES FOR THE WRONGFUL USE OF A CORPORATE NAME.—JUNE 12.

# George T. Stagg Co. v. E. H. Taylor, Jr., & Sons.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. REVERSED.

RES JUDICATA—JUDGMENT ENJOINING USE OF CORPORATE NAME IN PARTICULAR WAY—EVIDENCE AS TO TRANSACTION WITH PERSON SINCE DECEASED—DISSOLUTION OF CORPORATION—TRADE NAME.

Held: 1. Where plaintiff sought to enjoin defendants from using a corporate name consisting of his name with the addition of the word "company," and especially from using his autograph signature as a part thereof, a judgment enjoining defendants

George T. Stagg Co. v. E. H. Taylor, Jr., & Sons.

from using the script *fac simile* of the autograph signature of plaintiff was in effect a determination that defendants had the right to use the corporate name in roman letters, and therefore the right of defendants to use the corporate name in that way is *res judicata*.

2. Plaintiffs were not competent witnesses for themselves to establish the fact that one who was dead when the testimony was offered agreed, when one of the plaintiffs transferred to him his interest in a corporation, that the corporation should cease to do business.

3. Where a corporation organized for "the purchase, erection, and leasing of whisky distilleries and warehouses, the manufacturing of whisky, and the purchase and sale thereof as owners, agents, or merchants, and the keeping, fattening, and dealing in live stock in connection with said business of distilling," sold the distilleries which it owned, but continued to maintain its organization and to own property, the fact that a single person became the owner of all the stock did not cause the corporation to cease to exist, as the purposes for which it was organized had not ceased to exist; and therefore one who transferred his interest in the corporation can not complain of the use of the corporate name by defendants by authority of the corporation, though that name consists of his name with the addition of the word "company," and though the effect may be to injure his business.

W. S. PRYOR, JOHN W. RODMAN AND D. W. LINDSEY, FOR APPELLANTS.

HARGIS & DUNCAN AND HAZELRIGG & CHENAULT, FOR APPELLEES.

(No briefs in the record).

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

E. H. Taylor, Jr., was the owner of a distillery property near Frankfort, and from its trade mark brand it was known as the O. F. C. Distillery. In January, 1878, he conveyed to Geo. T. Stagg "the property known as the O. F. C. Distillery, with all its fixtures, appurtenances and equipments, of every kind, description and character." In the same month he assigned to Stagg all his rights, title, and interest in, and the exclusive right to use, the O. F. C. trade-mark, consisting of words as follows: "O. F. C. Hand Made

Sour-Mash Whisky. E. H. Taylor, Jr., Distiller, Frank-fort Kentucky." In October, 1879, the corporation, E. H. Taylor, Jr., Company, was organized under chapter 56 of the General Statutes of Kentucky. The incorporators and original stockholders were E. H. Taylor, Jr., Geo. T. Stagg, and Gus J. Boeppler. The articles of incorporation designated "E. H. Taylor, Jr., Co." as the name of the corporation, and provided that it should continue 25 years, or until September 1, 1904. Upon organization of this corporation, Stagg conveyed to it the same distillery property, etc., that E. H. Taylor, Jr., had conveyed to him. The corporation erected another distillery upon the land, which it named Carlisle Distillery. For this distillery it adopted the trade-mark brand consisting of the words: "Carlisle Standard Sour-Mash Whisky. E. H. Taylor Jr., Co., Distiller, Frank-fort, Kentucky." With the assistance of E. H. Taylor, Jr., it adopted an additional trade-mark, consisting of the name of the corporation in the fac similie handwriting of E. H. Taylor, Jr.; and from its adoption until April, 1891, that brand was placed upon the barrels of. whisky manu-factured by this distillery. At another time the corporation adopted a further brand for the product of the O. F. C. distillery, consisting of these letters, O. F. C. in large Roman letters, with the corporation script brand underneath them. There were some transfers of stock in the E. H. Taylor, Jr., Company between the organization and January 1, 1887. On that day E. H. Taylor, Jr., Company, Geo. T. Stagg (the principal stockholder), as parties of the first part, and E. H. Taylor, Jr., the owner of one share of stock, as the party of the second part, entered into contract by which E. H. Taylor, Jr., severed his connection with the company, and in consideration thereof the company agreed to con-vey a certain Woodford county distillery to Taylor, which

it subsequently did, and, in consideration of certain other benefits specified in the contract, he relinquished "all other interest whatsoever he may have in and to the effects and business of the said company." In a few days thereafter he transferred his share of stock. From that time on, the E. H. Taylor, Jr., Company owned property and kept up its corporate organization, by electing officers, etc. In November, 1887, Geo. T. Stagg and W. H. Gelshenen organized the corporation Geo. T. Stagg Company; and in the following December E. H. Taylor, Jr., Company conveyed the distilleries named, trade-marks, etc., to the Geo. T. Stagg Company. In the same month, the Geo. T. Stagg Company leased them to Geo. T. Stagg, but on October 14, 1890, they were reconveyed to the E. H. Taylor, Jr., Company. After the Geo. T. Stagg Company was organized, and the distilleries leased to Geo. T. Stagg, they were operated during certain times, and their trade-mark were used in advertising their product. Many other details might be given, if deemed necessary, as to the conduct of the business, after the E. H. Taylor, Jr. Company was organized, until October 6, 1889, when E. H. Taylor, Jr., & Sons, a firm which was organized subsequent to the transfer by E. H. Taylor, Jr., of his interest in the E. H. Taylor, Jr., Company, instituted a suit against the Geo. T. Stagg Company and Geo. T. Stagg, in which they sought to enjoin them from (1) branding packages containing their whisky with the name E. H. Taylor, Jr.; (2) using in any manner the autograph signature of E. H. Taylor, Jr.; (3) representing that E. H. Taylor, Jr., is the distiller at the O. F. C. Distillery; (4) representing that their whisky is Taylor whisky; (5) that they be required to erase from all packages containing their whisky, now in their custody or under their control, the words "E. H. Taylor, Jr., Co.," and "E. H. Taylor, Jr.,"

and especially that they be required to erase therefrom the autograph signature of E. H. Taylor, Jr. In that action they also sought to recover damages for the use of the distinctive name of their whisky and the autograph signature of E. H. Taylor, Jr., who was the principal member of the firm of E. H. Taylor, Jr., & Sons. In that petition it is averred that the defendants stamped their packages containing the product of the Carlisle Distillery, "Carlisle Standard Sour-Mash Whisky. E. H. Taylor, Jr., Co., Distiller, Frankfort, Kentucky;" and on the product of the O. F. C. Distillery they have branded or stamped the letters "O. F. C." and the words "E. H. Taylor, Jr., Co." During the progress of that action E. H. Taylor, Jr., Company presented its petition, and sought to be made a party to it, but the court refused to make it a party. The Franklin circuit court, in which the action was pending, rendered the following judgment: "First. That the defendants, Geo. T. Stagg and the Geo. T. Stagg Company, and each of them, and all their agents, employes and servants, be, and they are hereby, perpetually enjoined and restrained from representing in any way, by brands, stamps, labels, or other devices fixed upon or attached to barrels, bottles, or other packages containing whiskies manufactured at the O. F. C. or Carlisle Distilleries, situated in Franklin county, Kentucky, near the city of Frankfort, the words 'E. H. Taylor, Jr., Distiller,' except such whiskies as were manufactured and produced at the said distilleries, or one of them, before the first day of January, 1887. They are also perpetually enjoined and restrained from advertising and representing the said E. H. Taylor, Jr., as distiller of any of their whiskies, by any showcard, sign, symbol or advertisement in any newspaper or trade journal or trade report, or in any way whatever, except as to whisky actually

manufactured or produced at the said O. F. C. Distillery or the said Carlisle Distillery prior to the 1st day of January, 1887, and then the advertisement or representation must be accompanied with the explanation that it applies only to whiskies manufactured before the said 1st day of January, 1887; but this is not to preclude said defendants, or either of them, from attaching to the packages containing whiskies actually manufactured at said distilleries, or one of them, prior to said 1st day of January, 1887, the brands, stamps, labels or devices usually and customarily affixed to or stamped or branded upon similar packages by the E. H. Taylor, Jr., Company, whilst E. H. Taylor, Jr., was interested in, and connected with, the business of the said corporation. Second. Said defendants, and each of them, and all their agents, employes, and servants, are also perpetually enjoined and restrained from using, or claiming the right to use, in stamps, labels, brands, devices or advertisements, or in any other way, the script fac simile of the autograph signature of E. H. Taylor, Jr., except in connection with whiskies manufactured at the said O. F. C. Distillery of the said Carlisle Distillery prior to the 1st day of January, 1887. Third. Said defendants, and each of them, and all their servants, agents and employes are also perpetually enjoined and restrained from branding, stamping, or in any way marking the packages containing any of their whiskies with the words 'Taylor Whisky,' and from representing or describing any of their whiskies as 'Taylor Whiskies,' either by brands, signs, labels, showcards or advertisements in newspapers or trade journals or trade reports, or in any way whatever. Fourth. As to the question of the claim of the plaintiffs herein for damages or profits, this cause is referred to the master commissioner, to ascertain the number of barrels or other packages containing

whiskies manufactured at said two distilleries, or either
of them, and sold by the defendants, or either of them,
since the 1st day of January, 1887, and the quantities con-
tained in such barrels or other packages to or upon which
the said fac simile of the script autograph signature of
the said E. H. Taylor, Jr., has been attached, stamped or
branded; also the entire cost of manufacturing and selling
the said whiskies, the packages containing which were so
labeled, branded, or stamped; also the amount realized by
the said defendants, or either of them, by the sale of the
said whiskies,—and make full report thereof to this court."
There was an appeal from that judgment to this court,
which was affirmed.  Geo. T. Stagg Co. v. Taylor, 95 Ky.,
658 (16 R., 213) (27 S. W., 247).  There was another appeal
from a subsequent judgment in the case which was affirmed.
Taylor v. Geo. T. Stagg Co. (18 R., 680) (37 S. W., 954).
E. H. Taylor, Jr., & Sons, now a corporation, claims to have
succeeded to all the rights of the firm of E. H. Taylor, Jr.,
& Sons, among which is to use the name of E. H. Taylor,
Jr., in the advertisement of the products of its distillery.
This action was instituted by E. H. Taylor, Jr., & Sons
against Geo. T. Stagg Company and Geo. H. Watson.

In brief, the complaints are (1) that the defendants are
violating the judgment of the Franklin circuit court, in ad-
vertising the products of the O. F. C. and Carlisle Distill-
eries as being distilled by E. H. Taylor, Jr., Company, in-
asmuch as the name of E. H. Taylor, Jr., is placed upon
packages containing the products of the distilleries; (2)
that E. H. Taylor, Jr., transferred his interest in the E. H.
Taylor, Jr., Company, under an agreement that it should
cease to do business as a distiller; (3) that it has lost its
right to exist as a corporation by reason of the fact that
it transferred its distilleries, etc., to Geo. T. Stagg Com-

pany, and the further fact that Geo. T. Stagg at one time acquired all of its stock; (4) that as it filed a petition and asked to be made a party to the original suit, and the court having refused to make it a party, the judgment is final, and concludes its right to use its corporate name.

We will consider the questions in the order stated, except that 1 and 4 will be discussed together. In the begin- ning, it is well to understand the relief sought in the former action, and that which was granted. The plaintiff sought to prevent the defendants from using in the advertisement of the product of their distillery the name of E. H. Taylor, Jr.; from using the autograph signature of E. H. Taylor, Jr., and from representing that E. H. Taylor, Jr., is the distiller at the distilleries named, and to erase from all packages containing their whisky the words "E. H. Taylor, Jr., Co.," " E. H. Taylor, Jr.," and especially the autograph sbignature of E. H. Taylor, Jr. The court enjoined them (1) from using the words "E. H. Taylor, Jr., Distiller," on labels, etc., except on such whiskies as were manufactured before January 1, 1887, and from advertising and repre- senting E. H. Taylor, Jr., as distiller of any other whiskies by showcards, etc., except such as were manufactured be- fore January 1, 1887; (2) from using or claiming the right to use on labels, etc., the script fac simile of the autograph signature of E. H. Taylor, Jr., and also from branding, etc., their packages containing their whiskies, with the words "Taylor Whisky" or "Taylor Whiskies." It will be observed that, although the plaintiff sought to enjoin the use of the words "E. H. Taylor, Jr. Co.," it was only granted to the extent of the autograph signature of E. H. Taylor, Jr., as it might appear in the corporate name E. H. Taylor, Jr., Company, or otherwise. Had the court enjoined the use of the words "E. H. Taylor, Jr., Co.," it would have prevent-

ed the use of its corporate name. After the rendition of this judgment, the defendants respected it, unless to place the words 'E. H. Taylor, Jr., Co.," in Roman letters, in substitution for the script brand, was violative of it. When the plaintiffs sought to enjoin the defendants in the use of the name of E. H. Taylor, Jr., Company, and the court refused to so adjudge, it was equivalent of a denial of their right to restrain defendants from the use of that name. The trade-mark of E. H. Taylor, Jr., Company, had been transferred to the defendants at the time that action was instituted. The defendants acquired the right in the trademark which had been enjoyed by the E. H. Taylor, Jr., Company. If E. H. Taylor, Jr., Company, could permit defendants to use its name in advertising the product of the distilleries, then E. H. Taylor, Jr., & Sons had no right to restrain its use. If the corporation E. H. Taylor, Jr., Company, existed during the time Geo. T. Stagg Company or Geo. T. Stagg was operating the distilleries, then it had the unquestioned right to permit either of them to use its corporate name in advertising the product of the distilleries. To deny it the right to use its corporate name was equivalent to denying it the right to do business at all. It was not adjudged by the circuit court that the right of E. H. Taylor, Jr., Company, to exist had ceased, nor was the opinion of the court in 95 Ky. and 27 S. W. made to turn upon the fact that its right to exist had ceased, although the court in that case expressed the opinion that the circumstances induced it "to believe that it was the intention of all the parties at the time of the withdrawal of E. H. Taylor, Jr., from his business associations with Stagg, that the corporation E. H. Taylor, Jr., Company was to cease all active business operations." The court did not think that the corporation was dissolved or had lost its right to do

business, for it said, "As a matter of law, it stood suspended so far as the public was concerned." To support this conclusion, it cited Banking Co. v. Eisenman, 94 Ky., 83 (14 R., 705) (21 S. W., 531, 1049, 19 L. R. A., 684, 42 Am. St. Rep., 335). When the whole language used is considered, it is evident that the court was of the opinion that the corporation E. H. Taylor, Jr., Company still existed. The right denied to the defendant in the case was to use the script fac simile of the autograph signature of E. H. Taylor, Jr., as it appeared in the corporate name of E. H. Taylor, Jr., Company, and from representing that E. H. Taylor, Jr., was the distiller.

In this connection the fourth ground stated may be considered. It is insisted for appellees that as E. H. Taylor, Jr., Company presented its petition in the former case, and asked to be made a party, and the court made an order refusing to make it a party, the order was final and the judgment concludes its rights. In support of that contention the case of Williams v. Hall, 7 B. Mon.; 295, is cited. Counsel for the appellees then cites certain cases, among which are Davis v. McCorkle, 14 Bush., 754, where the court said: "The plea of *res adjudicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." Bement v. Trust Co. (18 R., 40) (35 S. W., 139), where the court said: "But it is a rule often recognized by this court that a judgment of a court of competent jurisdiction is in general conclusive, not only as to all matters determined by it, but all incidental matters which might have been properly litigated and decided in the same suit." Hardwicke v. Young (110 Ky.,

504) (22 R.. 1907) 62 S. W., 10, where the court said: "An adjudication is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to, or essentially connected with, the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense." If E. H. Taylor, Jr., Company is bound by the judgment, then E. H. Taylor, Jr., & Sons are likewise bound by it. The effect of the judgment, according to our opinion, is that E. H. Taylor, Jr., & Sons were denied the right to prevent the use of the corporate name of E. H. Taylor, . Jr., Company without deciding whether or not the fact that E. H. Taylor, Jr., Company having presented its petition to be made a party to the action, and the court's refusal to allow it to be made a party, would operate to make it bound by the final judgment, we are of the opinion that E. H. Taylor, Jr., & Sons are concluded by the judgment to question the right to use the corporate name E. H. Taylor, Jr., Company, by the defendants or by that corporation. In that action there was an issue as to the right of Geo. T. Stagg Company and Geo. T. Stagg to use the words E. H. Taylor, Jr., Co., in advertising the products of the O. F. C. and Carlisle distilleries. This right was claimed by virtue of the contract which existed between the defendants to that action and the corporation E. H. Taylor, Jr., Company. The defense was made by the Geo. T. Stagg Company and Geo. T. Stagg in their own interest, and necessarily in the interest of their grantor, E. H. Taylor, Jr., Company. They were successful on that issue. It was for the benefit of the defendants and the E. H. Taylor, Jr., Company. The plaintiffs' right to relitigate this issue is barred by the former judgment.

If we are in error in our conclusion as to the effect of the judgment, still our opinion on the other questions leads us to a conclusion that the plaintiffs are not entitled to recover in this action. When E. H. Taylor, Jr., transferred his interest in the E. H. Taylor, Jr., Company, was there an agreement that it should cease to do business as a distiller? There was nothing in the terms of the written contract which indicated that it was to cease to exist as a corporation, or to discontinue the business of distiller. On the contrary, the terms of the contract would indicate that it was to continue to exist and conduct its business. It was to loan E. H. Taylor, Jr., a large sum of money, if the necessity named arose. On August 15, 1887, E. H. Taylor, Jr., for E. H. Taylor, Jr., & Sons, wrote Fisher, a large stockholder in the E. H. Taylor, Jr., Company, a letter which indicates he understood it was to continue in business. In that letter he said: "Under the name it has no future with E. H. Taylor, Jr., & Sons in opposition. Under any other name, it is like beginning anew. Our folks must co-operate, or it is no go. Give me a half interest, and it is a go at once,—a sure go. I would not give ten cents on a dollar otherwise." In the former suit it was not claimed that any agreement existed by which it was to cease to exist. Such a claim was not made until an amended petition was filed here in 1898. If it was so important for the name of E. H. Taylor, Jr., to appear in the name of the company, it is strange it would have agreed to give E. H. Taylor, Jr., such a large amount of property for his apparently small interest, and at the same time agree not to use the name which was so important to its success. The writing which the parties executed furnishes strong evidence against the claim that there was an agrement that the company was to cease to do business. Besides,

E. H. Taylor, Jr.,'s letter, the circumstances of the case strongly support the conclusion that no such agreement was made. If such an important agreement had been made, it seems that it would have been embodied in the written evidence of the contract between the parties. E. H. Taylor, Jr., and J. Swigert Taylor gave testimony tending to show that such agreement was made with Stagg. Their testimony is incompetent, because it is concerning a transaction with one who was dead when the testimony was offered. Act approved February 23, 1898, which was enacted to take the place of section 606, Civ. Code Prac.; Hardin's Adm'r v. Taylor, 78 Ky., 593; Harpending's Ex'r v. Daniel, 80 Ky., 449 (4 R., 330). The fact that Geo. T. Stagg became the owner of all the stock of the E. H. Taylor, Jr., Company did not cause it to cease to exist as a corporation. The rule is well recognized that a corporation continues to exist notwithstanding a single person becomes the owner of all the stock. This doctrine is enunciated in Banking Co. v. Eisenman, supra, and in Gas Co. v. Kaufman (20 R., 1078) 48 S. W., 434. E H. Taylor, Jr., Company was not dissolved, nor had it ceased to exist, by reason of the fact it covered its distilleries, with the appurtenances, to Geo. T. Stagg Company. It maintained its organization and continues to own property during its entire existence. The annual election of its officers evinced a purpose to continue an existence as a corporation. Besides, the testimony tends to prove that its stockholders never intended a dissolution of the corporation during its corporate existence as fixed by its articles of incorporation. We will not review all the authorities cited by counsel for appellees to support the claim that the E. H. Taylor, Jr., Company ceased to exist as a corporation. But the cases cited which appear to be applicable to the question involved are

Railroad Co. v. Griest, 85 Ky., 619 (9 R., 177) 4 S. W., 323; Dudley v. Price's Adm'r, 10 B. Mon., 84. They are distinguishable from the case at bar. In the Griest case the court held that where a corporation has sold all of its property and franchises, etc., and thus, in effect, has been dissolved, the creditors of the corporation may enforce their demands in a court of equity; the proceeds of the property must be regarded as assets in the hands of stockholders for the payment of debts. In the Price case the corporation conveyed to the Commonwealth of Kentucky all of its interest in a certain road; all its rights and privileges under the charter. The State became the proprietor of the road, with all the privileges of the corporation. The company, having surrendered the right to construct the road, and destroyed the end for which it was incorporated, was by the operation of law dissolved, and had no further corporate existence. The corporation was organized to build a road. When its right to do so had been disposed of, there was nothing else for it to do, except to pay its creditors. The action was by its creditors, and the court held that they could enforce their claims against any property belonging to the corporation which had not passed into the hands of *bona fide* purchasers. In these cases the purpose of the creation of the corporation had ceased to exist, and the court properly held in the one case that the proceeds of the sale of the corporate property in the hands of the stockholders should be subjected to the payment of its debts, and in the other case that the unsold property of the corporation should be subjected to the payment of its creditors. In the case under consideration, the corporation had not disposed of all its property, nor had it placed itself in the position where it could not have carried on the business of distiller. The purpose of its organization had not

been accomplished. It was not confined to the operation
of the O. F. C. and Carlisle Distilleries, for it could have
acquired and operated other distilleries after transferring
them to Geo. T. Stagg Company, and conducted other bus-
inesses. Section 4 of the articles of incorporation reads
as follows: "The general nature of the business proposed
to be transacted by the incorporation is the purchase, erec-
tion and leasing of whisky distilleries and warehouses, the
manufacturing of whisky, and the purchase and sale there-
of, as owners, agents, or merchants, and the keeping, fat-
tening and dealing in live stock in connection with said
business of distilling." No creditor of it is seeking to sub-
ject its property to the payment of his debt. The plaintiff
had no right to force its dissolution, or to have it cease
to do business, but seeks to profit by the transactions be-
tween it and the Geo. T. Stagg Company and Geo. T. Stagg,
by wresting from it its corporate name, and also recover
the profits of the business which have accrued from its
use. This claim is not based upon any injury which re-
sulted to plaintiff by reason of these transactions, for E. H.
Taylor, Jr., helped to organize the corporation bearing the
name of E. H. Taylor, Jr., Company, and he could not sell
his interest therein, and then deny the company the right
to use its corporate name. At the time of these transac-
tions the General Statutes of Kentucky were in force. Sec-
tion 8, c. 56, provides: "The corporation shall not be dis-
solved prior to the period fixed upon in the articles of in-
corporation, except by a majority of the stock of its mem-
bers, unless a different rule is adopted in the articles; and
no such premature dissolution shall take place unless pre-
ceded by the newspaper publication required at its organ-
ization." The stockholders did not seek to dissolve the
corporation in the manner provided by the statutes or at all.

In our opinion, it never has been dissolved, or forfeited its right to continue business in its corporate name.

The judgment is reversed, with direction to dismiss appellee's petition.

Whole court sitting.

Petition for rehearing by appellee overruled.