CASE 13—PETITION EQUITY—February 23.

# Louisville Banking Company v. Eisenman, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

94   83
95   667

94   83
105   159
105   160
105   161

94   83
113   718

94   83
116   782
94   83
116   782

94   83
f123   161

1. CORPORATIONS—PURCHASE BY ONE STOCKHOLDER OF ALL THE STOCK.
—While one person can not organize a corporation under chapter 56 of the General Statutes, yet when a corporation has been created under that statute, with the stock distributed among several stockholders, the purchase by one of them in good faith of all the stock does not destroy the existence of the corporation, but merely suspends its franchise until the stock may be transferred to others; and while, in the meantime, the corporate property is liable for the individual debts of the sole owner, and subsequent purchasers of stock take it subject to the liens or equities of his creditors created prior to the transfer of the stock to them, yet the individual property of the sole owner is not liable for debts created by him on behalf of and in the name of the corporation. The parties contracting with him as a corporation get all they bargained for when they subject the corporate property to the payment of their debts.

2. SAME.—In corporations other than such as are created under chapter 56 of the General Statutes the purchase by one stockholder of all the stock does not dissolve the corporation.

3. FAILURE OF STOCKHOLDERS TO PAY IN STOCK REQUIRED BEFORE BEGINNING BUSINESS.—In the absence of a fraudulent purpose, the

failure of the stockholders in a corporation created under the statute to pay in all the stock required to be paid in before beginning business does not render them liable under that provision of the statute giving a right of action against the members of the corporation in favor of any person who has been injured through their "intentional fraud" in failing to comply substantially with the articles of incorporation.

4. SAME.—The claim of the corporation against a stockholder for stock subscribed and not paid in forms a part of the assets of the corpora· tion. and may be subjected by its creditors.

BARNETT, MILLER & BARNETT, BRIGHT & BRANDEIS FOR APPELLANT.

1. The appellee Eisenman was guilty of intentional fraud, (a) in that he failed and refused to comply with the charter of the corporation in owning all the stock and being the sole director and officer of the corporation. (First Blackstone, 470; Overseers v. Sears, 27 Pick., 1?5; First Lawson on Rights and Remedies, 598; Thomas v. Daking, 27 Wendell, 9; Brunswick v. Dunning, 7 Mass., 447); (b) in that he applied the money of the corporation to the payment of his own debts. (Gratz v. Redd, 4 B. Mon.; Railroad Company v. Bridges, 7 B. Mon.; Shakers v. Underwood, 9 Bush, 621; Myer, &c., v. DuPont, 79 Ky., 422); (c) in that he knowingly exceeded the limit of indebtedness of the corporation. (Brannin v. Loving, 82 Ky., 370; Stafford v. Cain (decided by the Superior Court January 27, 1892).

2. Appellee, being the president, sole director and only member of the corporation, must be presumed to have been familiar with the condition of his corporation and with the provisions of its charter (Brannin v. Loving, 82 Ky., 375); and in doing the acts complained of, he must have intended that the natural and ordinary results would follow. (11 American and English Cyclopedia of Law, 377; Van Etten v. Eaton, 19 Mich., 22; 22 Central Law Journal, 271 (March 19, 1886); Blake v. Griswold, 103 New York, 429.)

3. The public have a right to assume that the president of a company is familiar with its condition, and are not required to know more than the provisions of its charter. (Morawetz on Corporations, sec. 64; Brannin v. Loving, supra; Stafford v. Cain, supra.)

4. The right of action given by section 9 of chapter 56 of the General Statutes is in the creditor who has been injured by the acts therein denounced, and does not belong to a corporation whose officer or agent has been guilty thereof, and a fortiori not to the assignee for the benefit of creditors of such corporation. (Sec. 9 of chap. 56, General Statutes; Cook on Stockholders, sec. 216; Bristol, Assignee, v. Sandford, 12 Blatch., 341; Dutcher, Assignee, v. Bank, 12 Blatch., 435; Jacobson, Receiver, v. Allen, 20 Blatch., 525; McCarthy v.

Lavasche, 89 Ill., 270; Culvert v. Third National Bank, 64 Ill., 328; Hall v. Klinck, 25 So. Car., 351; Flash v. Conn, 109 U. S., 371; Wiles v. Suydum, 64 N. Y., 173; Stafford v. Cain, *supra*.)

BURWELL K. MARSHALL FOR APPELLEES.

1. Actual, intentional fraud must be proved before appellant can hold appellee liable for the corporation's debts. (Gen. Stats., chap. 56, sec. 9; Sanford v. McArthur, 18 B. M., 420.)

2. The appellant having elected to sue the corporation, and thus recognized its corporate existence, can not now sue the defendant. (Cook on Stock, Stockholders and Corporation Law, section 243; Cresswell v. Oberly, 17 Bradwell, 281; Pochelu v. Kemper, 14 La. Ann., 308.)

3. Although a corporation is advertised as having a capital stock of a fixed amount, the share-holders and directors are not liable personally, even though subscription's have not been taken to that amount. (First National Bank of Salem v. Almy & Co., 117 Mass., 476.)

   Our own statute provides that corporations shall be presumed to be legally organized until the contrary is shown in regular proceedings brought for that purpose. (Gen. Stats., chap. 56, sec. 17.)

4. The defendant, if liable at all, is liable only to the extent of the difference between what was actually paid in and the total amount that should have been paid in, and not to cross-plaintiff alone, but to the assignee of the corporation for the benefit of all the creditors, share and share alike. (Lane's Appeal, 105 Pa. St., 49.)

5. Parol proof may be made of the acts of a corporation. (Cook on Stock, Stockholders and Corporation Law, notes to section 714.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

A corporation styled The Eisenman Bros. & Co. was organized under chapter 56 of the General Statutes for the purpose of engaging in the milling business and the purchase of grain, &c. The incorporators were Jacob Krieger, Sr., David Frantz, Sr., and J. C. Eisenman. The capital stock of the corporation was fifty thousand dollars, and by its terms the corporation could begin business when two-fifths of its stock had been paid in. There is some conflict in the testimony as to whether as much stock as twenty thousand dollars had been paid when the corporation began to deal with the public, and we shall assume,

for the purposes of this case, that only fifteen thousand dollars of paid-up stock was in the vaults of the corporation at that time. J. C. Eisenman, the appellee here, purchased up the stock of the corporation, and became the sole owner of all the stock and the corporate property. This purchase was made in January, 1889. The appellee, on account of his individual indorsements for the corporation, made an assignment to the Germania Safety Vault and Trust Company, and the assignee instituted this action for the purpose of settling up the estate assigned, and its distribution among creditors. On the — day of October, 1889, the corporation also transferred its assets to the Trust Company for the payment of its debts. In the months of September, October and November of the year 1889, a firm known as J. C. Mattingly & Sons, engaged in the manufacture and sale of whisky, drew their drafts on the corporation of Eis·enman Bros. & Co. for large sums of money, amounting in all to about twenty thousand dollars. The drafts were accepted by the corporation, indorsed by Mattingly & Sons, and discounted by the Louisville Banking Company, the appellant in this case, and placed to the credit of J. C. Mattingly & Sons. The corporation of Eisenman Bros. & Co. had no interest in the loans, but had accepted the paper for the accommodation of J. C. Mattingly & Sons, and of that fact the appellant, from the facts and circumstances of this case, must have been fully apprised, and but for the failure of Mattingly & Sons the corporation of Eisenman Bros. & Co. would have continued solvent.

The appellant instituted its action at law and recovered a judgment against the corporation of Eisenman Bros. & Co., on the paper of Mattingly & Sons, and had an execution issued with a return of no property found. Having been made a defendant to the action for a settlement of the estate of the appellee by his assignee, the Germania Trust Company, the appellant is seeking to make J. C. Eisenman liable in his individual right for the amount of the Mattingly notes upon two grounds. *First.* The corporation of Eisenman Bros. & Co. practiced a fraud on the public when it announced that it had two-fifths of its capital stock paid in. *Second.* That J. C. Eisenman having purchased all the stock of the corporation, the corporation ceased to exist; and the latter having indorsed or accepted the paper, although in the corporate name, will not be allowed to say that it was a corporate liability, and more particularly when the fact of Eisenman being the sole owner of the stock was unknown to the appellant.

The formation of this corporation, of which the appellee was a member, was had under the General Statutes, and it is proper, therefore, to refer to some of the provisions of the statute on that subject, in order to a correct decision of the questions made by the appellant.

Section 1 of chapter 56, General Statutes, provides that "any number of persons may associate themselves *together* and become incorporated for the transaction of any lawful business, except banking and insurance, and for the construction of railroads; but such incorporation shall confer no powers or privileges not

possessed  by  natural  persons,  except  as  hereinafter
provided.''

It is, we think, manifest the Legislature never in-
tended to permit one person to conduct his ordinary
business in the name of a corporation, so as to ex-
empt him from personal liability, or his property not
embraced by or used in his corporate business from
the payment of a debt for no other reason than its
being a debt of the corporation.  The purpose of the·
statute was to enable two or more persons possessed
of capital or skill to associate themselves in business,
and to limit their liability as against the improvi-
dent acts of each other, or the act of the corporation,
in the event of pecuniary loss in the legitimate and
proper conduct of its business.  It invites the in-
vestment of the capital stock of one to be placed in
the same business with the skill of another, or a com-
bination of capital that encourages trade, the burden
of which mere individual enterprise would be un-
willing to assume, and it could not have been the
legislative intent that any one man could form a
corporation of which he is the creature and sole
stockholder, so as to limit his liability for debts con-
tracted, and from which he has derived the benefit,
to the extent only of what he might designate his
corporate estate.  He owns the entire property be-
longing to the corporation—it is his.  He can sell or
dispose of it as he pleases ; borrow money, acquire
property, in the name of the corporation, for the sole
purpose of exempting him from any responsibility,
other than that belonging to the corporation ; and
however reckless or improvident he may be, he has.

all to gain and nothing to lose. He could make a gift of the entire corporate estate, dispense with all corporate forms, and to say, when exercising such unlimited control, he is not personally responsible for every debt he contracts, would be to pervert the plain purpose of the statute.

· There is no such being in this State as a sole corporation, and certainly none such allowed to be created by the statute.

This corporation, however, was properly organized, had its several stockholders and board of directors, and was prospering in its business until these drafts were drawn for the benefit of Mattingly & Sons. The drafts were all made payable at the Masonic Savings Bank, and no direct transaction was had by the appellee and the appellant with reference to the paper. There is, in fact, no evidence showing that the corporation ever authorized the acceptance of these drafts, and while the paper was negotiable, if the corporation actually existed, its liability on the paper might well be questioned. The appellant, however, maintains that this appellee, when he signed the corporate name to these drafts, was the sole owner of the stock, and that from the moment he purchased the stock of Krieger and Frantz, the corporation ceased to exist.

The corporation may have been virtually dissolved, and yet we are not disposed to hold the appellee personally liable for the amount of the drafts discounted by the bank. That both the appellant and appellee were acting on the belief that the corporation was alone liable is beyond dispute, and the corporation, as it was called, the appellee being the sole

owner of the stock, submitted to a judgment against it for the drafts in an action by the bank, and the appellee is making no resistance to its payment out of the property of the corporation, but insists that no personal liability exists. The appellant has obtained all he contracted for. There was no fraud practiced upon it by the appellee, and certainly no intention to bind himself personally, nor any of the proceeds of these drafts applied to his benefit in any manner, or to the benefit of what he supposed was an existing corporation. If the stock had been held as it was originally, the pecuniary condition of the corporation would have been the same, as no act had been done by the appellee by which the interest of creditors or those dealing with the corporation would have been prejudiced. Nor are we prepared to adjudge, after a corporation has been created by the statute, with the stock distributed among several stockholders, that the purchase by one stockholder of all the stock destroys the corporate existence, and places all the property of the corporation upon the same footing with the other estate of the individual stockholder. The legal title to the estate of the corporation is still vested in it, and while the stockholder's interest could be subjected to the payment even of his individual debt, when he contracts in behalf of the corporation, and with no fraudulent intent, it seems to us the party with whom he contracts gets all he bargains for when he subjects the corporate property to the payment of his debt.

In the case of Swift v. Smith, 65 Md., 428, Cruikshanks owned all the stock of the corporation, and

executed a mortgage on the corporate property to Swift to secure the latter in the sum of seventeen thousand dollars loaned the corporation. The mortgage was signed by Cruikshanks in his own name and that of the corporation, and subsequently Cruikshanks sold shares of stock to third parties, who claimed that this mortgage executed by the sole owner, Cruikshanks, had no precedence over their stock; that it was the individual act of Cruikshanks, and not that of the corporation. The court held that the stockholders took their stock subject to the mortgage, and said that whether in the name of the corporation or the individual stockholder, the latter being the absolute owner in equity if not in law, the mortgage was effectual, and the subsequent purchasers of stock took their interests in the corporate property with the equities or incumbrances placed upon it when Cruikshanks was the sole owner. It is said in that case that "while the purchase by Cruikshanks of all the stock in the corporation, and all its property, did not necessarily work a surrender of the franchise, it did virtually, for the time being, suspend its operation as a corporation until the election of new officers through new stockholders purchasing from Cruikshanks. If, from the moment Cruikshanks became the real owner, he had concluded to transact the business as an individual, and without the corporate name, can it be doubted that the mortgage created a valid equitable lien on the property," &c.

The case cited comes nearer adjudging that a purchase of all the stock by one stockholder dissolves

the corporation than any we have found, and still
such an. act, in the light of the opinion, only sus-
pends the operation of the charter, and places the
stockholder in a condition where he may abandon its
provisions and control the property as his individual
estate.

In the case before us there was no surrender of
the franchise, but the business conducted in good
faith and under the belief that the corporate estate
was alone liable. The corporation still lived, and
had such vitality as enabled the holder of the stock
to transfer it, and proceed with the corporate powers
as if he had never become the sole owner; and the
argument that such a construction as to the mean-
ing of the statute would enable two or more to organ-
ize a corporation, with a view of vesting the entire
stock in one of the corporators, is not available, for
the reason that the corporate property in the hands
of one stockholder, when made liable by him for his
corporate or individual debts, remains so, although he
may transfer the stock to others, as they must take it
subject to the incumbrances the sole stockholder has
placed upon it prior to his sale of the stock. It
must be recollected that we are determining alone,
in this case, the meaning of the statute under which
these corporations are formed ; as it is plain, as to
both public and private corporations, unless other-
wise provided by the charter, the title to the cor-
porate property still remains in the corporation,
although one may become the sole owner of the
stock. In Button v. Hoffman, reported in 61 Wis.,
20, it was held that one having purchased all the

·stock of a private corporation does not, thereby, become the owner of the property, and to maintain replevin must bring the action in the corporate name. In Wilde v. Jenkins, 4 Paige, 481, it is said: "A conveyance of all the stock to a purchaser gives to such purchaser only an equitable interest in the property to carry on the business under the act of incorporation and in the corporate name." In Winona, &c., R. Co. v. St. Paul, &c., R. Co., 23 Minn., ·359, it is said: "The corporation is still the absolute ·owner, and vested with the legal title to the property, and the real party in interest, although another party has become the sole beneficial owner in its rights, property and immunities." The elementary writers on the subject all concur in holding that the fact of one person becoming the owner of all the ·shares of stock, does not work a dissolution of the ·corporation. (Cook on Stock, &c., 2d ed., sec. 631; Morawetz on Private Corporations, page 635.)

While we recognize the general rule on the subject ·sustained by the authorities referred to, it must be held that the purchase by one of all the shares in a ·corporation *created under the statute*, is a dissolution ·of the corporation, to the extent that it suspends the ·exercise of the rights under the franchise until the owner transfers the stock, in good faith, so as to maintain an organization under the statute. There is a difference between the attempt to create one person a corporation under this statute, and the purchase, in good faith, of all the stock after the corporation has been created. In the first instance there is no corporation, and in the last there is a franchise, the

operations of which are suspended until the stock may be transferred to others; and while in the hands of one person the corporate and individual property are ordinarily alike liable for the payment of any debt contracted by the owner, and subsequent purchasers of stock take it subject to the liens or equities of the creditors of the sole owner created prior to the transfer of the stock to them.

In the present case, as before stated, there had been no change in the property or conduct of the business as to mislead or injure creditors. No fraud had been practiced by the appellee, and the entire credit was not only given the corporation, but the appellant had pursued it to judgment, and when in a court of equity, the appellant should be confined in distributing the property of the corporation to its *pro rata* share of the proceeds, and neither the individual estate of the appellee assigned for the benefit of creditors or the appellee made personally liable for these debts to the bank.

It is said the appellee is liable to the corporation for stock subscribed and unpaid, and if so, his liability to the corporation exists, and the amount of stock owing by him, when collected, becomes a part of the corporate assets, to be distributed among the creditors of the corporation. The appellant is not entitled to the whole, unless it is the sole creditor, and so the chancellor below adjudged. The statute makes the members of the corporation, or such of them who are guilty of intentional fraud in failing or refusing to comply substantially with the articles of incorporation, liable to an indictment, and it is urged in argu-

ment that the failure to pay up all the stock agreed to be paid by the act of incorporation was a fraud on the appellant, who did not deal with the corporation until long after it began to do business. If the stock was not paid up, this, in the absence of a fraudulent purpose, did not make the stockholder individually liable for all the debts of the corporation; and besides, the proof shows that the stock paid in and the assets of the corporation were amply sufficient to pay all the indebtedness, excepting the drafts drawn by Mattingly & Sons, and this indebtedness was created long after the corporation had been organized and was conducting a prosperous business. This view of the question is sustained by the case of National Bank of Salem v. Almy & Co., reported in 117 Mass., 476.

We perceive no reason for reversing the judgment below, and the same is affirmed.

To a petition for rehearing filed by counsel for appellant, Judge PRYOR delivered the following response of the Court:

There is a manifest distinction between this case and Brannin, &c., v. Loving, &c., 82 Ky., 370. In that case the corporation for its own benefit drew on Spillman & Mitchell for five thousand dollars. The paper was accepted by them for accommodation, and afterward indorsed to Brannin & Co. by the president of the corporation, who knew the condition of the corporation, and that he was violating the provisions of the charter. In this case the corporation of Eisenman

& Bros. were the acceptors for accommodation only, and it is apparent the bank knew it; and not only so, the bank pursued the corporation to judgment, and is now in a court of equity seeking to subject not only the assets of the corporation, but to make its president personally responsible for the debt.

The good faith of the appellee can not be questioned. The appellant obtained all it bargained for, and there is no reason for fixing an individual liability on Eisenman for this debt.

Petition overruled.