CLARRIE A. APSEY, ADMINISTRATRIX, ETC., v. THE DETROIT, LANSING & NORTHERN RAILROAD COMPANY.

*Res judicata—Second appeal—Contributory negligence.*

Where, after the reversal of a judgment in a negligence case on the ground of the contributory negligence of the father of the decedent, the case is again tried, and on a second appeal the evidence of such negligence is the same as that given on the former trial, the question will be treated as *res judicata.*

Error to Ingham. (Person, J.) Argued February 14, 1895. Decided April 16, 1895.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion, and in 83 Mich. 432.

*Black & Dodge,* for appellant.

*M. V. & R. A. Montgomery,* for defendant.

GRANT, J. It was held in the former opinion that the plaintiff could not recover on account of the contributory negligence of James Apsey, the father of the deceased, who was driving at the time of the accident. The evidence of such negligence in the present record is the same as that in the other, nor does the record differ in any particular from the former. That opinion was written by Chief Justice CHAMPLIN, and concurred in by the entire Court. Upon the second trial in the circuit, the court, in accordance with the former opinion, directed a verdict for the defendant. That decision settled the law of the case, and to reverse it now would result in overruling that decision. It is unnecessary to cite authorities that the question is *res judicata,* and will not be reviewed upon appeal to this Court after a second trial.

Judgment affirmed.

LONG and HOOKER, JJ., concurred with GRANT, J.

McGRATH, C. J. Plaintiff's intestate was killed at a crossing. The course of the highway is north and south, and that of the railroad east and west. The decedent, who was 11 years old, was in a buggy with his father, who was driving. They approached the track from the south. The train came from the west. A ditch had been made parallel with defendant's tracks about 4 feet wide, and the bottom of which was about 18 inches below the surface of the roadbed. This ditch was covered in the center of the highway with planking 10 feet in length, leaving a passageway of that width immediately south of the tracks. In cutting this ditch the dirt had been thrown up to the south thereof, so that, just before the planking was reached, there was an embankment over three feet high on the east side of the driveway, and 20 inches high on the west side of the traveled way. These embankments projected into the traveled way, reducing the passageway to 7 feet. Plaintiff's theory was that the father did not discover the approach of the train until within the right of way, and near the track, and then attempted to avoid a collision by turning his horse to the east, when the right front wheel struck the embankment upon the east side of the highway, the left front wheel went off the culvert into the ditch, overturning the buggy, and throwing its occupants against the locomotive. Both were killed. The declaration charges neglect to give the crossing signals, and the failure to restore the highway to its former condition. The court instructed the jury that decedent's father was guilty of contributory negligence, and directed a verdict for defendant.

Plaintiff's testimony tended to show that south of defendant's right of way, and west of the highway, there were various obstructions of the vision, consisting of buildings, orchard, and fences and higher ground, so that a traveler

upon the highway, approaching the tracks from the south, could not, at any place between a point 40 rods south thereof and the south line of the right of way, see a train approaching the highway from the west; that the crossing signals had not been given; and there was testimony tending to show that the father was on the lookout as he approached the crossing. Defendant produced its civil engineer, who testified that by actual measurement the highway 50 feet south of the railroad track was 1 foot and 4 inches higher than the top of the rail at the center of the crossing, and that at 20 feet south it was 4 inches higher than the rail; that the slope of the traveled part of the highway for the 50 feet was gradual, down to the railroad track; that the highest point of the mound on the right of way, and west of the highway, which was claimed to obstruct the view of a train from the west, was 164 feet west of the highway; that such highest point was 6 feet higher than the railroad track opposite it, 6 feet 2 inches higher than the track at the crossing, 5 feet 6 inches higher than the highest point of the track in that vicinity, 4 feet 8 inches higher than the highway 50 feet south of the crossing, and 5 feet 8 inches higher than the highway 20 feet south; that, going west from the crossing, there was an up grade at the rate of 4 feet 4 inches to the mile for a distance of 770 feet, from which point the grade descended towards the west; that the eyes of a man sitting in a buggy were 6 feet 9 inches above the ground, and that the passenger cars run on defendant's road were 14 feet high, and the smoke stacks of its engines about the same; that he had been practicing his profession about 4 years, and had taken the levels and measurements in the usual way. The plaintiff's testimony tended to show that at the time of the accident, in the month of July, the earth west of the highway was covered with grass and weeds to the height of 29 inches, and it is insisted that the measure-

ments given did not take into consideration this growth. Plaintiff's testimony tended to show that the horse approached the crossing on a walk. The train was running from 40 to 50 miles an hour. At the rates given, when the horse was 100 feet from the track, or 55 feet south of defendant's right of way, the train must have been 1,100 feet, or over 65 rods, west of the crossing, and 330 feet west of the crown of the track. Both of the parties were killed, and the presumption is that they were in the exercise of reasonable care. There is no testimony which conclusively rebuts that presumption, and the question of contributory negligence should have gone to the jury.

The judgment should be reversed, and a new trial granted.

MONTGOMERY, J., did not sit.