RUTTLE *v.* WHAT CHEER COAL MINING CO.

1. CORPORATIONS — CONTRACTS — PROMOTERS — VALIDITY — STATU-
TORY PROVISIONS.

Whether, under section 6995, 2 Comp. Laws, a contract made by
the organizer and principal stockholder of a corporation,
prior to the filing of the articles of association and payment
of the franchise fee, will bind the corporation, is immaterial
in a case in which the corporate organization as actually ex-
ecuted was a mere cover for the organizer, under protection
of which it was designed he should individually conduct the
business, and he recognized the contract after incorporation
and agreed to carry it out.

2. SAME — CONTRACTS — REPRESENTATION BY OFFICERS — LIABILITY
OF CORPORATION.

Where the directors of a corporation, who comprised the entire
body of its stockholders, permitted the principal stockholder,
who held the offices of president, treasurer, and general man-
ager, to exercise all of their functions and to assume the en-
tire control and management of the corporate affairs, the
corporation, having received the benefit of services performed
under contract with him, is as much bound as though it had
itself formally contracted for the services.

3. WORK AND LABOR — ACTION — IMPLIED CONTRACT — EXTENT OF
SERVICES.

In an action against a corporation for the value of services per-
formed during a certain period, the fact that plaintiff was
employed by another corporation during the same period and
received an annual salary therefor, will not prevent his recov-
ery, where his employer is not objecting and he testifies that
he performed all the services required of him by his employer,
and that the general manager authorized his employment by
defendant, though the principal stockholder of both com-
panies claims that the original contract of employment was
that plaintiff "was to do anything either for me or the com-
pany or the W. company that I might ask him, without other
compensation."

4. CORPORATIONS — OFFICERS — COMPENSATION — IMPLIED CONTRACT.
In an action against a corporation for the value of services

performed, a claim that because plaintiff was a stockholder, secretary and a director of defendant the law presumes, in the absence of an express contract, that his services were gratuitous, and there could be no recovery on an implied contract, is not tenable, where plaintiff was merely a nominal stockholder and received no compensation as an officer.

5. SAME—SERVICES—VALUE—EVIDENCE—SUFFICIENCY.

Where, in an action against a corporation for the value of services performed in superintending defendant's operations, plaintiff testified that the services were worth $5,000, stated their character, and in a general way what he did, and was cross-examined at length, and the services were of such a character that it would be difficult to place a value upon the several items, there was sufficient evidence of their value to go to the jury.

6. WORK AND LABOR—ACTION—EVIDENCE—VALUE.

Where, in an action against a corporation for the reasonable value of services performed as superintendent, it appears that plaintiff was also employed and received an annual salary from another corporation, and has brought suit against the principal stockholder of both corporations for still other services, the character and extent of the services rendered to the other two employers is a material inquiry, and a very wide latitude on cross-examination is permissible.

7. SAME—EVIDENCE—ADMISSIBILITY.

In an action against a corporation for the reasonable value of services performed, evidence as to the price at which plaintiff resold to defendant's principal stockholder certain stock in another corporation, that he received no benefit from its increase in value while he held it, and the price at which a third person transferred the stock to the principal stockholder, is immaterial, and its admission prejudicial.

Error to Bay; Sharpe, J., presiding. Submitted May 11, 1908. (Docket No. 35.) Decided June 27, 1908.

Assumpsit by Charles S. Ruttle against the What Cheer Coal Mining Company for services rendered. There was judgment for plaintiff, and defendant brings error. Reversed.

*Morris L. Courtright* (*DeVere Hall*, of counsel), for appellant.

*Weadock & Duffy* (*T. F. Shepard*, of counsel), for appellee.

BLAIR, J. Plaintiff sued defendant on the common counts in assumpsit to recover for services alleged to have been performed in its behalf, and filed the following bill of particulars:

"1904, July 23, to 1905, July 17.

"To personal services in and in connection with making and looking after contracts and supervising the construction of railroad grade and railroad bridges.

"To services in and in connection with and looking after contracts for the construction of building, including tipple, engine house, boiler house and other buildings.

"To services generally in connection with and in the construction and development of the What Cheer Coal Mining Company's plant and property and the handling of all business matters connected therewith and with the completion of its plant and facilities for operating as a coal mining proposition, including railroad facilities and marketing the product of the company's mine....$5,000.

"Interest on the above at 5 per cent. to date of judgment."

In April, 1901, the plaintiff was employed by the Wenona Coal Mining Company, a corporation composed of Mr. E. B. Foss, Mr. Jackson, Mr. Norris, and Mr. Conway, as stockholders. The capital stock was $100,000, of which Mr. Foss owned one-third, Mr. Norris one-third, and Messrs. Jackson and Conway, together, one-third. Mr. Norris was president, Mr. Jackson, vice-president, Mr. Conway secretary, and Mr. Foss treasurer and general manager.

Mr. Foss testified:

"The management of the Wenona Coal & Mining Company was entirely with me, but I always consulted more or less with Mr. Norris. Mr. Jackson did not give it much attention."

That he employed plaintiff at a salary of $1,400 a year:

"The substance of the conversation was that he would enter my employ—my employ and that of the Wenona Coal Mining Company at a salary of $1,400 per year; that he was to do anything in the coal line, either for me or the company or the Wenona Coal Mining Company, that I might ask him to do, without other compensation."

Plaintiff testified that his employment was in behalf of the corporation only, and was to look after the business in a general way under the direction of Mr. Foss.

In May, 1902, Mr. Foss bought the Jackson stock and transferred $5,000 of it to plaintiff, taking his note, holding the stock as collateral, to be paid for out of dividends, plaintiff paying the renewal discounts. Plaintiff was elected secretary, and in February, 1903, his salary was raised to $2,000. Mr. Foss was the owner of leasehold interests in certain coal lands in Bay and Saginaw counties, and plaintiff testified:

"Prior to the organization of the What Cheer Coal Mining Company I was associated with the property that afterwards came into possession of the company. My connection with the property commenced in June, 1902. Mr. Foss was also connected with this property, and brought it to my attention, and from that time on I was in a way connected with it. * * * Mr. Foss and I had an arrangement relative to the work; the What Cheer Coal Mining Company articles of incorporation are dated July 23, 1904, and in the arrangement I had with Mr. Foss I was to be a stockholder in that company. * * *

"Mr. Foss had the articles prepared and I signed them and a few minutes after they were signed on the same day, in Mr. Foss' office, which was also the office of the Wenona Coal Mining Company, I had a conversation with Mr. Foss. * * *

"I called Mr. Foss' attention to the fact that there was but one share of stock set opposite my name, and told him that was not according to our agreement or understanding, and he says, 'Never mind, Mr. Ruttle, I have done that for a special reason,' giving the reason. * * * And he says, 'that matter will be fixed up later, and you will be taken care of all right. Don't worry about that, it is all right.'

"*Q.* At that time what was said about the future work of the What Cheer Coal Mining Company as to what should be—  *  *  *

"*A.* I was to look after their work.

"*Q.* What work were you to look after?

"*A.* Everything in general.

"*Q.* What was said with reference to your looking after the work, and with reference to the work that had been done before between you and Mr. Foss?  *  *  *

"*A.* Mr. Foss being general manager, he says, 'Go ahead, Mr. Ruttle, and we will push the thing along under the new organization, the What Cheer Coal Company,' and that I was to take the general supervision of everything.  Mr. Foss was general manager, president and treasurer of the What Cheer Company.  Walter I. Foss was vice-president, and I was secretary.  At the time the corporation was formed, the company had, as near as I can recollect, 960 acres of coal lands tested up.  Some of these lands were owned previously by Mr. Foss.  The others were covered by coal leases."

The articles of association of defendant were signed July 23d, 1904, but were not filed with the county clerk until August 16th following.  The capital stock of $100,-000 was divided into 4,000 shares, of which Mr. E. B. Foss subscribed for 3,998 shares, Mr. W. I. Foss, his son, for one share, and plaintiff, for one share.  Plaintiff testified as to the agreement that he should have stock in defendant company:

"*Q.* Was the amount fixed?

"*A.* The amount was set previous to that, it was fixed previous to that time.

"*Q.* At how much?

"*A.* At from ten to fifteen thousand dollars.

"*Q.* That is the proposition you refer to?

"*A.* Yes, sir.

"*Q.* As a gift outright?

"*A.* That was the proposition.

"*Q.* That is, you were not to pay anything for it?

"*A.* I was to have that for my services at the time the What Cheer Company was organized and for my services afterwards I was to be compensated.

"*Q.* But that was the proposition that you have referred to at times?

"*A.* Yes, sir.

"*Q.* And that was the only one?

"*A.* That was the only one.  Mr. Foss represented the defendant in all talks about any proposition with me, and the talk was before the company was formed.  No recorded action was ever taken relating to my claim. * * *

"*Q.* Was the talk as to the stock, that is, the understanding as to the stock, a part of the understanding as to the compensation that you speak of also?

"*A.* The stock I expected I would get at the time the company was organized, the compensation would be after.

"*Q.* I understand, but was it your claim that the stock was also a statement of the compensation?

"*A.* It was up to that time.

"*Q.* Up to what date?

"*A.* Up to the organization of the company.

"*Q.* After that do you claim that your stock that you should have received is a part of the compensation for your work which you did?

"*A.* No, sir."

Plaintiff testified that he was employed each day by the defendant company and put in "from half to two-thirds of my time."

In July, 1905, plaintiff resigned his office in both companies, sold his stock to Mr. E. B. Foss, and soon afterwards commenced this suit.  No salary was fixed for any of the officers or directors and none of them drew any down to the time of plaintiff's resignation.  Plaintiff recovered a judgment upon verdict of the jury for $2,000, which defendant has removed to this court for review upon writ of error.  Counsel for defendant present their argument in support of the assignments of error under seven heads, as follows, viz.:

(1) The claimed contract did not bind defendant.

(2) Employment by Wenona Company precludes recovery.

(3) There could be no recovery on an implied contract.

(4) No competent evidence of the value of plaintiff's services.

(5) Limitation of defendant's proof.

(6) Contract claimed not a divisible one.

(7) General rulings.

1. Under this head it is argued:

"Contracts between the corporation and third persons must be entered into by the directors and not by the stockholders. * * * A single stockholder cannot make a contract for and in the name of the corporation which has any binding force or validity, except by subsequent ratification or adoption by the corporation in the regular manner. * * * Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. 2 Cook on Corporations (5th Ed.), § 709; *Randall* v. *Dudley*, 111 Mich. 437, 439; *Rough* v. *Breitung*, 117 Mich. 48, 55; *In re Moser*, 138 Mich. 302, 313; *Louisville Banking Co.* v. *Eisenman*, 19 L. R. A. 684 (94 Ky. 83); *Rice* v. *Peninsular Club*, 52 Mich. 87."

It is further contended that under section 6995, 2 Comp. Laws, any agreement between plaintiff and Foss prior to the filing of the articles of association and payment of the franchise fee could not bind the corporation. *Wright* v. *Sugar Co.*, 146 Mich. 555; *Hastings Industrial Co.* v. *Moran*, 143 Mich. 679.

The evidence warrants the conclusion, at least, that the corporate organization as actually executed was a mere cover for Mr. E. B. Foss, under the protection of which it was designed that he should individually conduct the business. The property turned over to the corporation all belonged to him, and the affairs of the corporation were controlled and managed by him without even the formal action of a board of directors. Plaintiff and W. I. Foss were mere nominal stockholders for purposes of organization, and, in fact, Mr. E. B. Foss was the corporation.

In the paragraph of Cook on Corporations cited by defendant, the author says, after using the language quoted in the brief:

"There are, however, two exceptions to the rules given above. The first is that corporate action may arise in other ways than by the formal action of its board of directors or meeting of stockholders or of its agents. * * * The second exception is that where a corporation is merely

a 'dummy,' the court has power to ignore its corporate existence and to hold that the acts of the stockholders are the acts of the corporation itself."

It is unnecessary to determine that, under the circumstances of this case, the contracts of Foss in advance of incorporation would bind the corporation, since, according to plaintiff's testimony, Mr. Foss recognized the alleged agreement after incorporation and promised to carry it out. We are, also, of the opinion that if the jury believed the testimony of plaintiff they would be amply warranted in finding that the corporation after its legal institution ratified and adopted the alleged agreement and, in the absence of an express agreement, knowingly accepted the benefit of plaintiff's services. The directors, who comprised the entire body of stockholders of the corporation, having permitted the president, treasurer and general manager to exercise all of their functions and to assume the entire control and management of the corporate affairs, and having received the benefit of his acts and of plaintiff's services, the legal entity is as much bound as though it had itself formally contracted for the services. 2 Cook on Corporations (5th Ed.), § 707. We do not think that the court erred in refusing to direct a verdict for defendant on this ground.

2. Did the fact that plaintiff's services for the period in question were contracted for by the Wenona Company and a salary paid therefor preclude a recovery from defendant? The Wenona Company is not raising this question and it does not come with good grace from Mr. Foss, who claimed, in substance, that the services of plaintiff were rendered for the defendant under the original agreement with the Wenona Company "that he was to do anything in the coal line either for me or the company or the Wenona Coal Mining Company that I might ask him to do without other compensation." Plaintiff testified that he fully performed all of the services required of him by the Wenona Company and the general manager of the company authorized his employment by

defendant. We think the court properly refused to direct a verdict for defendant on this ground. *Smith* v. *Railroad Co.*, 102 N. Y. 190; *Wallace* v. *DeYoung*, 98 Ill. 638.

3. It is claimed that because plaintiff was a stockholder, secretary, and director of defendant company, the law presumes, in the absence of an express contract, that his services were gratuitous and there could be no recovery on an implied contract in this case. We do not think that the court would have been justified in instructing the jury, as a matter of law, that, under the circumstances of this case, no agreement to pay for plaintiff's services could be implied. *Dodge* v. *Traction Co.*, 152 Mich. 100.

4. The only evidence offered of the value of plaintiff's services was his own testimony that they were worth $5,000. The plaintiff testified as to the character of his services and, in a general way, what he did, and was cross-examined at length upon the whole subject. As stated by the trial judge in overruling the motion for a new trial, "the services rendered by plaintiff, as testified by him, were of such a character that it would be difficult, if not impossible, to place a value upon the several items of service as they were performed." We agree with the circuit judge that it cannot be said, as a matter of law, that there was no competent evidence upon the subject.

5. Plaintiff testified, somewhat vaguely, that he devoted from one-half to two-thirds of his time to the performance of the services for defendant. At the same time he claimed that he was fully discharging his duties towards the Wenona Company and was also rendering services to Mr. E. B. Foss, individually, for which he had brought suit. The court permitted the defendant to show the fact that plaintiff had sued Foss for alleged services covering the same period, but refused to permit it to show the amount of the claim or the character of the services. In this ruling we think the court was in error. It was admitted that there was no agreement fixing the amount of plaintiff's compensation and that he was only entitled to

recover what his services were reasonably worth. The time which could be devoted to defendant's service must depend largely upon the extent and character of the services rendered to his other two employers. While the value of plaintiff's services to Foss was not material, we think their character and extent were. And we are of the opinion that where a man claims to be employed by three masters at the same time, as in this case, very wide latitude is permissible on cross-examination, and that defendant's counsel should have been permitted to inquire fully into the details of the claim.

6. This contention is not supported by the testimony.

7. Plaintiff was permitted to answer the following question:

"*Q.* What was the book value of the stock in the Wenona Company at the time you made the sale to Mr. Foss?

"*A.* Approximately 85 per cent. above par, $1.85. I sold the stock to the Wenona Coal Company."

He was then permitted to show that he sold the stock to that company for the amount that had been paid by him with the discount added. He was also permitted to show that on his sale to the Wenona Company he got no benefit of the increase in value of such stock and that during such time he was paying interest at the rate of 6 per cent. per annum.

On cross-examination of Foss by plaintiff's counsel, the following occurred:

"*Q.* When Mr. Jackson retired from the company he simply took out and was paid by you the money which he put in? Objected to as immaterial. Objection overruled and exception taken.

"*A.* That is the case.

"*Q.* Totally without interest?

"*A.* He didn't get any interest.

"*Q.* He never got a cent of dividends before he sold, out of his stock?

"*A.* I don't think he did."

The objections to these questions should have been sus-

tained.   The testimony elicited was immaterial and obviously prejudicial to defendant.

For the errors above pointed out, the judgment is reversed, and a new trial granted.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.