RUTTLE *v.* WHAT CHEER COAL MINING CO.

1. JUDGMENT—APPEAL AND ERROR—LAW OF CASE—CONTRACTS.
   The decision of the Supreme Court on a former appeal, that plaintiff who brings suit to recover for services rendered is entitled to have the facts submitted to a jury, is conclusive in a subsequent appeal.

2. ELECTION OF REMEDIES—ESTOPPEL—IMPLIED CONTRACTS.
   Where it was not shown in a prior trial that plaintiff had elected by bringing a distinct action to hold an individual liable for the services rendered to defendant corporation, and the plaintiff's declaration in such action against the third party does not show such election, it was proper not to direct a verdict on that theory.

3. TRIAL — CONDUCT OF COUNSEL — ARGUMENT — OPENING STATEMENT.
   An opening statement by plaintiff's counsel which places before the jury incompetent facts concerning stock held by the plaintiff after a ruling by the Supreme Court that the facts were not admissible, and which was followed by an attempt to present similar facts on cross-examination of the defendant and by statements relative to defendant's wealth and the profitableness of his business, constitutes prejudicial error.

4. APPEAL AND ERROR—RECORD—SIZE—COSTS.
   On a second appeal, in a case which might have been presented in a record of 150 pages, in view of the previous decision, costs for printing the same are limited accordingly.

Error to Bay; Sharpe, J. Submitted February 24, 1910. (Docket No. 30.) Decided April 1, 1910.

Assumpsit by Charles S. Ruttle against the What Cheer Coal Mining Company for services rendered. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*M. L. Courtright* (*De Vere Hall*, of counsel), for appellant.

*Weadock & Duffy* (*T. F. Shepard*, of counsel), for appellee.

OSTRANDER, J. The record of a former trial of this cause was before this court, and the judgment for the plaintiff was reversed. 153 Mich. 300 (117 N. W. 168). The contentions there presented are stated in the opinion then handed down. Upon the second trial there was a verdict and judgment for the plaintiff, and it is said in the brief for appellant, that the facts were nearly identical upon both trials. None of our former rulings are questioned. The errors for which the former judgment was reversed were the ruling of the trial judge in refusing defendant the privilege of showing the extent and character of plaintiff's services for other masters, and the amount he charged or received for them, and the ruling which permitted plaintiff, over objection, to show certain dealings with respect to stock in another company, the real value of such stock, and the price at which plaintiff parted with it. It appears therefore that the defendant is concluded upon the subject of the right of plaintiff to take the verdict of the jury, under proper instructions.

The charge of the court was substantially the same upon both trials. If, as we assume, it did not appear at the first trial, as it now appears, that plaintiff has begun a suit against Edgar B. Foss personally to recover for certain services claimed to have been performed by plaintiff for said Foss, we agree with the trial court that it cannot be said from a reading of the declaration in that case that plaintiff elected to hold Foss responsible for the very services described in the bill of particulars in this case. Refusal to direct a verdict for defendant upon the theory that plaintiff had made the alleged election was not error.

It is again urged that the case was not properly sub-

mitted to the jury on the theory of an implied contract. While the reasons now asserted for denying the right to recover upon an implied contract are not the reasons asserted here when the cause was first before the court, it was asserted that there could be no recovery as upon an implied contract. The contention was overruled. The point is not now open to the appellant. *Curtiss* v. *Curtiss*, 143 Mich. 676 (107 N. W. 323); *Pierce* v. *Underwood*, 112 Mich. 186 (70 N. W. 419); *Apsey* v. *Railroad Co.*, 104 Mich. 646 (62 N. W. 992).

Such questions as are properly for consideration we take up in the order in which they are presented in the brief for appellant.

1. **Statements and Conduct of Counsel for Plaintiff.** It appeared that Mr. Foss sold to plaintiff stock in the Wenona Coal Mining Company of the par value of $5,000, permitting plaintiff to give his note therefor and to pay the same out of dividends declared. Plaintiff was to and did pay the discounts upon the note. When plaintiff withdrew from the employment, he sold his stock to the Wenona Coal Mining Company, receiving therefor $3,000, of which amount $2,500 was dividends and $500 the discounts or interest plaintiff had paid on his note. At the first trial plaintiff was permitted to show that the book value of the stock when he resold it was 85 per cent. above par, and that he got no benefit from the increase in value. It was held that this was error. Upon the second trial, in the opening statement of counsel for the plaintiff, was the following:

"The matter of his (Mr. Ruttle, the plaintiff) connection then with the Wenona Company was considered, and he resigned as secretary of the Wenona Company, as well as secretary of the What Cheer Company, because Mr. Foss was in control of both. He had in the Wenona Company $5,000, or $5,000 had been sold to him along, I think, in 1903. It had been sold to him at the time Mr. George D. Jackson's interest in the mine was purchased, and Mr. Ruttle had paid for it by giving his paper, which Mr. Foss indorsed, and Mr. Ruttle paid the discount on

it, and as dividends were paid from time to time upon the stock, he applied them on the note, so that in 1905 Mr. Ruttle had paid on the note dividends received by him on the stock, $2,500. He had also paid, from time to time, out of his own moneys to the extent of about $500 interest on these notes, and Mr. Foss gave him for the Wenona Coal & Mining Company stock $3,000; that is, the amount of the dividends and the amount he had paid upon the interest, without reference to the value of the stock. We will show that the value of the stock at that time was about $1.85 for every dollar of face value."

To this statement counsel for defendant excepted. When Mr. Foss was on the witness stand he was interrogated by counsel for defendant concerning the demands, if any, made upon him by the plaintiff at or about the time plaintiff tendered his resignation. Plaintiff had testified that he told Mr. Foss that if he did not carry out his agreement with him he (plaintiff) should quit the company altogether, and in that case wanted to sell the interest he had in the Wenona Company, and witness then gave details of the conversation he had upon the subject. On his cross-examination it developed that he had received a certain voucher for $3,000 when he assigned the stock, and another voucher for his salary before he presented to Mr. Foss any demand for pay for services. On the cross-examination of Mr. Foss the following occurred: Counsel for plaintiff:

"It is our contention that it has become a matter of concern by the action of defendant in this case. They have introduced here, for what purposes I do not know, the fact that Mr. Ruttle sold his stock. Now, Mr. Ruttle sold his stock for what he saw fit to take for it, and for what Mr. Foss or the Wenona interest saw fit to give him for it, and I am at an entire loss to understand how it could be of any possible concern to this case, or in any way material, but they put it in. The only possible use that can be made of it is the contention that Mr. Ruttle's connection with the Wenona Company—he got $3,000. Now, we propose to show that when he bought the stock he gave his notes for it, and incurred a financial responsibility; that he applied the dividends that were paid from

time to time upon that note, amounting, as stated, to $2,500, and we propose to show that when the stock was sold it was sold at a value which was other and different than the actual value of the stock itself.

"*The Court:* Mr. Ruttle didn't have to sell it for less value than it was worth, unless he chose.

"*Mr. Weadock:* Your honor has forgotten, perhaps, the testimony that Mr. Foss has stated—Mr. Ruttle gave as a reason for selling the stock—he testified that Mr. Foss stated to him that if he sold the stock to some other people, he would see that there was never any dividends paid upon it.

"*The Court:* That would not be any concern of Mr. Ruttle's.

"*Mr. Weadock:* Mr. Ruttle said, 'If that is the condition, you can treat other people in that way, you can treat me in that way, and therefore I want to sell.'

"*Mr. Hall:* I want to take exception at this time to the entire statement of counsel, after your honor has ruled. It is merely getting something out that is prejudicial.

"*Mr. Weadock:* I move to strike out all the testimony in relation to the stock by Mr. Ruttle to the Wenona Coal & Mining Company.

"*The Court:* I think it should stand. It seems they agreed upon the price of the stock, and so far as this case was concerned, we will assume it was a fair price.

"*Mr. Weadock:* They put it in. We have not.

"*The Court:* They put it in under cross-examination of Mr. Ruttle. We think as a part of the conversation they agreed on the dock. They both agreed, I think, at that time that the question of the stock sale was talked of, and I think they had a right to put it in. I think it may stand, and the objection is sustained as to the other. The talk they put in was for the purpose, I think, to show the checks drawn between them, as to numbers, dates," etc.

This was no less prejudicial to defendant upon this trial than it was upon the former trial. It cannot be assumed that the opening statement of counsel was not deliberately made.

Plaintiff performed services, and was suing to recover the value thereof. They were worth no more and no less because Mr. Foss was engaged in other business, whether

that business was profitable or was unprofitable. It appeared that his business was lumbering, and that it was a large business involving an investment of $1,000,000 annually. The fact that he was so employed was, it may be inferred, and indeed Mr. Foss so stated, a reason for his employing plaintiff to look after his coal business. In his argument to the jury one of plaintiff's counsel said:

"And Mr. Ruttle went to work as I have stated, after this talk at the time of the organization, and he conducted that business. He worked nights and Sundays and daytimes to the best possible advantage as he understood the situation, in pursuance with the talk he had had with Mr. Foss that they were to go ahead and do the very best they could do out there, and that he would compensate him for his work, and Mr. Foss was down here making his hundreds of thousands of dollars a year in his lumber business—

"*Mr. Hall:* We take an exception to that statement.

"*Mr. Weadock:* Make it a million if you please, I do not care what it was, he was carrying on a prosperous business under his own statement."

Another of his counsel said to the jury:

"It [the Wenona Coal & Mining Company] was so prosperous and so successful that Mr. Ruttle is made secretary, and his salary increased to $2,000 a year, for the Wenona mine; and he carries it on; and, when the stock was closed out by Mr. Ruttle to Foss two years later, that stock had earned $2,500, just 50 per cent. or half its value. Mr. Ruttle had increased it so that the capital stock of that company, at $100,000, had earned in two years $50,000, and Mr. Foss had his share of those profits in his pockets, and Mr. Ruttle had his paltry $2,500 that they say they generously gave to him, but for which they held his paper and had him iron-clad and bound by his note, and by the stock put up as security for it.  *  *  *  He hired him to run the Wenona mine, to handle it and take his place, and relieve him of the pressure, relieve him of the work so he could go on making money in the lumber business, and he did it, didn't he?"

These are examples of many statements calculated, and

we must assume intended, to contrast the financial positions of plaintiff and Mr. Foss, and to induce the jury to give to plaintiff a verdict, or to enhance the verdict, upon the theory that plaintiff's services resulted directly and indirectly in a considerable profit to Mr. Foss. Many of the statements are not based upon testimony. They are in line with efforts made during the trial to secure the admission of testimony prejudicial to defendant; as, for example, a statement from Mr. Foss of the amount he owed the Wenona Coal Company, the amount of salary he drew from that company. Unpleasant as the duty is, this court has many times enforced, by reversal, the rule that parties to litigation may not profit by arguments of counsel of similar nature. The learned trial judge was at some pains to direct attention of the jury to the real issues, and to divert attention from the false issues proposed in the argument of counsel. The case is an exceedingly close one upon the facts, in so far as opinion can be based upon the printed record. The verdict is a considerable one when it is considered that plaintiff was, during the same period, receiving a salary of $2,000 per annum, in consideration of which he claimed to be rendering services. The plaintiff performed certain services for defendant. Either they were performed under circumstances entitling him to recover what they were reasonably worth, or else they were not so performed. Whether they were or not does not depend at all upon the value of the business done by Mr. Foss, or the profits he made, or the price at which plaintiff sold certain stock. We think the case calls for the application of the rule stated.

2. **Damages.** It is said the verdict was excessive. As the case must go down for a new trial, we do not consider the point.

3. **Errors in the Charge, and in Admitting Testimony.** The charge was a fair one. As to rulings admitting testimony, we find nothing advanced in argument which calls for particular discussion beyond that which has been indulged.

The judgment is reversed and a new trial granted.

In view of the previous rulings of this court, the necessity for a record containing the substance of all the testimony is not apparent. Assuming that it was, for any reason, deemed desirable to incorporate in the bill of exceptions the substance of all the testimony, we estimate that the entire record, properly prepared, should have contained no more than 150 printed pages. Costs will be limited accordingly.

MONTGOMERY, C. J., and HOOKER, BLAIR, and STONE, JJ., concurred.