## Russell Lumber & Supply Co., Inc., et al. v. First Nat. Bank of Russell.

(Decided Jan. 31, 1936.)

CLYDE L. MILLER and D. E. ERNST for appellants.

DYSARD & TINSLEY for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Greenup circuit court sitting in equity. The appellant Russell

Lumber & Supply Company was incorporated in 1916, and engaged in the retail lumber and building materials business in the city of Russell. It became the owner of certain real estate which it used in connection with its business as an office, plant, and lumber yard. The corporation was originally owned by four stockholders, but in 1922, or shortly prior to that time, one Clyde K. Turley became the owner of all of the outstanding capital stock of the corporation. Compare Louisville Bank Co. v. Eisenman, 94 Ky. 83, 21 S. W. 531, 14 Ky. Law Rep. 705, 19 L. R. A. 684, 42 Am. St. Rep. 335, and Hawley Coal Co. et al. v. Bruce, 252 Ky.455, 67 S. W. (2d) 703. It is claimed by the appellants that at some time in 1922 the corporation sold its personal assets— that is, its stock of lumber, building materials and automobile trucks—to P. S. Bull, and that out of the proceeds of this sale the corporation paid all of its outstanding indebtedness. It is indicated in the record, although not definitely established, that the appellee, First National Bank, was at that time a creditor of the corporation on a note of the face value of approximately $5,000. Certain it is, however, that Bull executed a note to the First National Bank of Russell in the amount of $5,000, which he signed "Russell Lumber & Supply Company by P. S. Bull," and that he delivered this note to Clyde K. Turley ostensibly as either the entire payment or a part payment for the personal assets of the corporation. Turley took this note to the bank and and either received the money on the note or else used it in whole or in part to take up the previous note of the corporation. The bank says that it was never aware of any change in the Russell Lumber & Supply Company other than that Bull succeeded Turley as president. Bull continued the business at the same location in the name of the Russell Lumber & Supply Company, and Turley does not claim to have done anything to disabuse the mind of the bank of the impression that it was still dealing with the corporation. Turley claims, however, that Bull simply occupied the real estate owned by the corporation, under lease, at a rental of $125 per month.

On December 7, 1930, a renewal note in the sum of $3,844.17, due two months thereafter, was executed and delivered to the appellee bank by the "Russell Lumber & Supply Co. by P. S. Bull, President." On March 6, 1931, the bank brought suit on the note against the

Russell Lumber & Supply Company, suing it as a corporation, and against P. S. Bull individually, and asked for a general order of attachment. On March 26, 1931, the bank filed an amended petition attacking as fraudulent a deed from the Russell Lumber & Supply Company, the corporation, to Clyde K. Turley & Sons Company, Inc., another corporation which was also an alter ego for Turley, and it made Clyde K. Turley & Sons Company, Inc., a party defendant. On April 1, 1931, the bank, by a second amended petition, attacked another conveyance of real estate between the same two corporations. On March 28, 1931, Bull took French leave from Russell, and surreptitiously removed and sold to a dealer in Ironton, Ohio, all of the stock of lumber, building materials, and trucks theretofore located at the lumber yard of the Russell Lumber & Supply Company. It is claimed by Turley that Bull was then about $600 in arrears on his rent, and that he (Turley) took possession of the property, including the account books left by Bull.

Under date of April 27, 1931, a note was executed by Clyde K. Turley & Sons Company, Inc., in the sum of $3,802.18, representing the amount still due on the Russell Lumber & Supply Company note, to the appellee bank, and was delivered to it to be held as collateral on the Russell Lumber & Supply Company note. The parties differ widely as to the circumstances surrounding this transaction. It is claimed by appellee that the note of Clyde K. Turley & Sons Company was given to it as a guaranty against any prejudice to its debt and in consideration of an extension of time in order for Turley to make an effort to collect some of the accounts receivable owing to Bull which he had taken over on Bull's departure. Appellants, on the other hand, claim that the president of the bank told Turley that he was expecting a visit from the bank examiners and would like to have a note from Clyde K. Turley & Sons Company as collateral on the note then in litigation in order to avoid criticism from the examiners. Turley says that he therefore executed the note because of his friendly feeling toward the bank and without consideration. On November 21, 1933, the bank filed a third amended petition in this suit, asking to recover from Clyde K. Turley & Sons Company on this note. On final hearing, the chancellor gave judgment against the Russell Lumber & Supply Company and C. K. Turley

& Sons Company in the sum of $3,752.76, with interest, representing the net amount shown by the evidence to be then due, and likewise decreed the cancellation of the various deeds complained of, and directed a sale of the property to satisfy the debt.

It is claimed by appellants (1) that the Russell Lumber & Supply Company, the corporation, was never indebted to the bank and that the judgment against it is therefore erroneous; and (2) that there was no consideration for the note of the Clyde K. Turley & Sons Company given to the bank to be held as collateral on the first note.

In Louisville Banking Co. v. Eisenman, supra, and in an unbroken line of decisions since that time, we have held that a corporation entered into a state of suspended animation upon the acquisition of the entire capital stock by one person. It follows that the identity of the incorporated Russell Lumber & Supply Company was merged in the person of Clyde K. Turley. Even if we should accept his unsupported story to the effect that Bull was not acting for the corporation in making the note to the bank, but was simply acting for himself, "trading and doing business as the Russell Lumber & Supply Company," it is clear that the corporation would not be heard to deny its liability on this obligation under the circumstances here presented. It was Turley who, by his own story, was the sole owner of the Russell Lumber & Supply Company, and who permitted Bull to continue the business in the corporate name under which the corporation had theretofore secured credit at the bank. It was he who took the original $5,000 note to the bank, signed "Russell Lumber & Supply Company by P. S. Bull," and induced the bank to accept it. Mr. Turley is the only witness who asserts that there was separate identity between the Russell Lumber & Supply Company, a corporation, and the Russell Lumber & Supply Company that owed money to the bank. He made no effort to support his testimony by any other evidence showing the nature of his transactions with P. S. Bull. We think the evidence was amply sufficient to support the conclusion of the chancellor on either the theory that Bull was in fact acting for the corporation or that the corporation is estopped by its actions from denying its identity with the trade-name used by Bull.

Turley says that the transfers of real estate to the Clyde K. Turley & Sons Company were made in consideration of the assumption by that company of the debts of the Russell Lumber & Supply Company (incorporated). He admits that none of the $10,000 authorized capital stock of the Clyde K. Turley & Sons Company has ever been paid in, although he says that each of his sons was to have $1,000 of the capital stock in consideration of their "experience and good workmanship" and that his wife had a debt of $6,000 owing to her by the Russell Lumber & Supply Company, Inc., which would be taken care of by issuing stock to her in the amount of $6,000, but that this stock had never been issued. He says also that he had subscribed for $1,000 of the capital stock, but had paid in nothing, and no stock had been issued to him. It is apparent that, even if this organization should be considered a de jure corporation, the corporate veil was diaphanous, and the chancellor was amply justified in brushing it aside to prevent the perpetration of a fraud on creditors.

The instrument given to the bank pending this suit by Clyde K. Turley & Sons Company, to be held as collateral on the Russell Lumber & Supply Company note, was in the form of an ordinary negotiable note. As said in Davis v. Poulos, 237 Ky. 763, 36 S. W. (2d) 373, 374:

"A negotiable instrument imports consideration, and, to overcome the presumption of consideration, the proof should be clear and convincing."

According to the appellee's story of the transaction, the note was supported by a consideration. According to the story of appellant, there was no consideration. Though his explanation is clear, it is far from convincing. The chancellor knew the parties, and we have no hesitancy in accepting his conclusion on the evidence in this case.

Judgment affirmed.